## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

STEVENS BALDO & LIGHTY, PLLC,                        :
:
                Plaintiff,          :          Civil Action No. 2:18-CV-1600
:
   v.                                                      :          **COMPLAINT**
:
ANTHONY J. DELLUNIVERSITA,                          :          **Jury Trial Demanded**
and PAUL A. DELLUNIVERSITSA                         :
:
             Defendants.            :
_____:

Plaintiff, Stevens Baldo & Lighty, PLLC ("Stevens Baldo" or "Plaintiff"), by and through their attorney, Kenneth G. Walsh, as and for their Complaint against Defendants, Anthony J. Delluniversita ("Anthony") and Paul A. Delluniversita ("Paul"), hereby alleges as follows:

### SUMMARY OF THE ACTION

1.     This is an action to recover a series of fraudulent conveyances and to collect an unpaid, registered judgment originally entered in the matter entitled *Albert P. Malvino, Representative of the Estate of Bonnie Pereida, Deceased v. Paul A. Delluniversita, et al.*, No.2:12-cv-401 (S.D.TX.) ("Malvino") in the amount of $1,337,201.08.[1]

2.     Malvino involved fraud by Paul and Anthony Delluniversita and two companies that they owned and controlled: PCA Collectibles, Inc. ("PCA") and PCI Coin Grading Inc. ("PCI"). The Delluniversitas fraudulently mis-graded gold and silver coins by PCI, which were then sold to largely elderly customers through PCA.

---

[1] The Malvino judgment has now been domesticated in the Supreme Court of the State of New York, Suffolk County. *Albert P. Malvino, Representative of the Estate of Bonnie Pereida, Deceased v. Paul A. Delluniversita, et al.*, Index No. 601594/2018 (Sup. Suffolk Co.).

3.      PCI, owned Anthony Delluniversita, fraudulently graded coins, giving them a higher grade or value than the coins' warranted.  PCA, owned by Paul and Anthony, sold the coins to unsuspecting customers using high pressure, unsolicited telemarketing.  The telemarketers targeted elderly customers, such as Bonnie Pereida.

4.      Over a five-month span (January 20, 2011 to May 2011), Bonnie Pereida purchased purportedly rare coins from PCA.  During this period, PCA sold Ms. Pereida 135 grossly overvalued and overpriced coins in transactions ranging in size from $1,595.00 to $122,500.00.  In all, Ms. Pereida paid $727,569.00 to PCA for fraudulently misgraded coins.  The evidence presented at trial in the Malvino Action established that the coins sold to Ms. Pereida were worth less than $200,000.

5.      While Anthony, Paul, PCI and PCA were defendants in the Malvino Action, Anthony, Paul and PCA fraudulently transferred: (i) real property located at 56 Easton Ave., North Babylon, NY 11703 to a Living Trust for the Benefit of Gail A. Delluniversita[2] and (ii) Anthony and Paul swept the profits out of PCA on a weekly basis with actual intent to hinder, delay or defraud either present or future creditors and left PCA undercapitalized, so as to frustrate creditors ability to satisfy judgments.

## THE PARTIES

6.      Plaintiff Stevens Baldo & Lighty, PLLC is a professional limited liability company created under the laws of Texas with its principal place of business at 550 Fannin Street, Suite 700, Beaumont, Texas.  Stevens Baldo & Lighty, PLLC is the assignee of the Judgment obtained by Ms. Pereida's estate against Defendants.

---

[2] Gail A. Delluniversita is the wife of Anthony and the mother of Paul.

7.     Defendant Anthony J. Delluniversita, resides at 56 Easton Avenue, North Babylon, New York 11703.  Upon information and belief, Anthony is still sells coins.

8.     Defendant Paul A. Delluniversita, resides at 428 Myrtle Avenue, West Islip, New York 11795. Paul is currently on Allstate insurance broker with offices at 1350 Deer Park Avenue, North Babylon, New York 11703.

## THE JUDGMENT DEBTORS

9.     As detailed below, after trial on the merits, PCA and PCI were found liable to Ms. Pereida for the principal sum of $1,337,201.08 together with interest from December 12, 2007. Anthony was found to be personally liable for PCA and PCI's portions of the damages.

10.     The judgment debtor, PCA is a New York corporation with its former principal place of business at 1045 Route 109, Suite 100, Lindenhurst, New York 11757.  PCA was formed by Paul A. Delluniversita as the chief executive officer and registered agent.

11.     The judgment debtor, PCI is a Florida corporation with its former principal place of business in Delray Beach, Florida.

## JURISDICTION AND VENUE

12.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) as Plaintiff and Anthony and Paul are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorneys' fees.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in New York, and Anthony and Paul are subject to personal jurisdiction in this Court with respect to the claims alleged herein.

## BACKGROUND

14.    Ms. Pereida, was a Corpus Christi, Texas resident, who had been a stockbroker for 51 years and was the first vice president of the Corpus Christi branch of Merrill Lynch.

15.    After the market crash of 2008, Ms. Pereida decided to invest in rare coins as a way to protect her assets against inflation.  In 2010, Ms. Pereida began purchasing rare coins. At this time, Ms. Pereida was approximately 76 years old and in declining health as a result of a stroke.

16.    Beginning in January 2011, Ms. Pereida received unsolicited telephone calls from PCA telemarketers.  After making her first purchase from PCA on January 20, 2010, PCA called her on a weekly and sometimes a daily basis representing that she "needed the coins to round out and collect her collection(s)" and that she was "getting a good deal."  PCA's sales representatives convinced Ms. Pereida to purchase as many coins as possible.[3]

17.    From January through May 2011, Ms. Pereida made 31 separate purchases of coins from PCA.  Ms. Pereida purchased a total of 135 coins from PCA for a total of $727,560.00.

*Representations Made for Each Transaction*

18.    After each purchase, PCA sent Ms. Perieda an invoice through the United States Postal Service which listed the coins purchased.  Each invoice provided the sale price and the description and grade of each coin as determined by "independent third-party" grader PCI.

19.    Each invoice stated that "[a]ny item not found to be satisfactory[] must be returned by the 15th day of receipt. After that all sales are final. All items are guaranteed to be authentic."

---

[3] Many of the facts asserted herein are taken directly from Judge Ramos' Findings of Fact and Conclusions of Law in the Malvino Action.

4

*How Defendants Perpetrated the Scheme to Systematically Over-Graded Coins*

20.    On January 20, 2011, when Pereida made her first purchase from PCA, they sent her a numismatic guide book, commonly known as the "Red Book." The Red Book sets forth the estimated value of coins based on their grade level.

21.    Malvino and Pereida used the Red Book to assess the value of the PCA coins based on the grades established by the purported independent grader as indicated on PCA's invoices.

22.    With every purchase, PCA's invoice represented the purchase price and description and grade of each coin as determined by "independent third party" grader. It did not disclose the grader was PCI, a company owned by the majority shareholder of PCA.

23.    Each invoice also stated that "[a]ny item found not to be satisfactory[] must be returned by the 15th day of receipt. After that all sales are final. All items are guaranteed to be authentic."

24.    These representations lulled Malvino and Pereida into a false sense of security. Because when they compared the representations on the invoice to the values listed in the Red Book, they believed that they were getting very good prices on the coins sold by PCA.

25.    But just like the victims in the Madoff scandal, the representations on the invoices were made up. Anthony purchased coins through PCA, the coins were graded by PCI, owned and controlled by Anthony free of charge to PCA. The coins were then sold by PCA also owned by Anthony and his son Paul, so there was no independent grader. The grades assigned to the coins were made up to grossly inflate their value. After assigning each coin a grade, Anthony priced it on PCA's invoice according to the value in the *Coin Dealer Newsletter*, more commonly known as the "Grey Sheet." This would show that a coin sold to Perieda would be

5

more valuable when she referenced it in the Red Book. The Red Book was given to Pereida to reinforce the sense she was receiving a deal and not to question the authenticity of the coins or their grading until the fifteen days expired and the sales became final. Essentially, the representations on the invoice prepared by PCA was as phony as a Bernie Madoff account statement from 2007. PCA never disclosed to Perieda that the grader was not independent, that the coins were not authentic, in fact one coin was counterfeit and all were mis-graded to inflate their value.

26.     After Ms. Pereida died in October of 2011, Malvino was appointed executor of her estate.

### *Discovery of the Fraud*

27.     Malvino, after becoming executor of Ms. Pereida's estate, retained Heritage Auction Appraisal Services, Inc. ("Heritage"), one of the nation's leading and largest coin valuation and auctioning companies. Heritage conducted an appraisal of Ms. Pereida's coins.

28.     According to Heritage, the fair market value of the coins as of October 29, 2011, was $190,865.00---26.2% of the amount paid by Ms. Pereida. Heritage reviewed PCI's "grading" on the coins and concluded that PCI over graded coins, as well as selling a counterfeit coin and improperly assigning "grades" to coins that did not qualify for "grading" because they were damaged or "cleaned" – not in original condition.

29.     After obtaining this appraisal, Malvino retained another expert, Paul Montgomery ("Montgomery") to assess the grade and value of each coin.

30.     Montgomery's findings were generally consistent with those of the Heritage. Montgomery concluded that the reasonable retail value of the coins was $150,964.00 at the time Pereida purchase them from PCA -- 20.8% of the amount she paid.

31.     Montgomery also found a consistent pattern of over grading, including a pattern of over grading to take advantage of dramatic changes in the valuation for small grade variations. He graded each coin lower than PCI did, with some being graded 19 to 23 levels lower.

32.     Like Heritage, Montgomery identified a counterfeit coin. He also identified 25 coins that were ungradable because they were either cleaned or damaged.

33.     Montgomery requested another appraisal to verify his conclusions. Professional Coin Grading Service ("PCGS") conducted the appraisal.

34.     PCGS's findings were consistent with those of Montgomery. It also assessed every corn at lower grade level that PCI did, and it agreed with Montgomery that 26 of the 135 coins were ungradeable because of their condition or lack of authenticity.

### Lawsuit Commenced Against PCA, PCI, Paul & Anthony

35.     On or about December 21, 2012, Malvino commenced an action in the United States District Court for the District of Texas, Corpus Christi Division alleging *inter alai* mail and wire fraud under § 1962(c) and conspiracy under § 1962(d) under the Racketeer Influenced and Corrupt Organization Act ("RICO"), violation of the Texas Deceptive Trade Practices Act ("DTPA"); common law fraud, negligent misrepresentation and common law civil conspiracy arising out of Pereida's purchase of coins from Paul, Anthony, PCA and PCI.

### Admission of a Fraudulent Conveyance

36.     During the course of discovery, Paul admitted at his deposition on April 11, 2014 that he works at PCA, and that he and his father swept out the profits of PCA on a weekly basis. *See* Paul Dep. at 15:23-25.

37.     On April 11, 2014, Anthony to was deposed in the Malvino Action. Anthony testified that he and Paul distributed the profits of PCA on a weekly basis at a 60/40 split to him and Paul, respectively, per an agreement they had. *See* Anthony's Dep. at 9:11-22.

38.     During the four years that the Malvino Action was pending (2012-2016), Anthony and Paul were defendants in the Malvino Action, an action for monetary damages, Anthony and Paul fraudulently transferred the "profits" to themselves on the basis of a 60/40 percent split. This stripped the company's assets making it effectively unable to meet the bills that were coming when people demanded refunds for the fraudulent coin sales.

## *PCA Ripped Others Off Using the Same Misgrading Scheme*

39.     During discovery in the Malvino Action, defendants produced other complaints that demonstrated that they had similarly defrauded other customers out of several hundreds of thousands of dollars.

40.     For example, documents produced indicated that they defrauded Kenneth Campbell of Arizona who was taken for approximately $38,000 in August 2012, using a similar misgrading scheme. According to a complaint filed with the Arizona Attorney General's Office, Anthony met Mr. Campbell in a parking lot at the Phoenix Airport to sell him coins. Mr. Campbell reviewed the coins, accepted the coins and received a PCA invoice identifying the coins, all of which PCA graded 63 or higher. Mr. Campbell gave Anthony a cashier's check for $45,000. Anthony returned to New York.

41.     On information and belief, when Mr. Campbell took the coins to a dealer in Phoenix, the appraiser informed him the coins were worth $8,000, not the $45,000 he had paid.

42.     Similarly, on information and belief, PCA sold Mr. James D. Arthur coins it represented were worth $700,000 over a two plus year period -- from 2010 to 2012. On

8

information and belief, Mr. Arthur's complaint to the South Dakota's Attorney General's Office alleged that PCA systematically over graded coins sold to Mr. McArthur, as well as selling counterfeit coins. An appraisal showed that these coins were worth perhaps $70,000 to $105,000, rather than the $700,000 PCA valued and sold the coins for.

43.      On November 17, 2014, a bench trial was held before United States District Court Judge, Neva Gonzales Ramos.

44.      PCA has defended its practices by asserting that the numismatic industry is subjective, and that no two graders will assign the same grade to a coin. But the court rejected this defense in the Malvino Action, noting in its Findings of Fact and Conclusions of Law dated May 20, 2015 that: "Anthony had no formal training as a coin grader, had not attended a coin grading program, and did not rely on consensus grading." *Id.* at ¶ 43. Further, the court found that "[t]he assessments by PCGS [Professional Coin Grading Service] and Montgomery [of the Pereida coins sold by PCA] were within two grade levels of each other for a majority of the coins and nearly 90% of the assessments were within three grades levels of each other." *Id.* at ¶ 41. These served as indicia of fraud.

### *Conveyance of Real Property*

45.      On May 12, 2015, while the parties awaited Judge Ramos' ruling, Anthony Delluniviersita and Gail A. Delluniversita (his wife) transferred their property which was owned jointly at 56 Easton Avenue, North Babylon, New York 11703 to a Living Trust for the Benefit of Gail A. Delluniversita to protect the property from the impeding judgment.

46.      Judge Ramos found in favor of Malvino on almost each count.[4] The court awarded damages of $536,934.00 for economic damages for the common law fraud and

---

[4] The Texas Deceptive Trade Practice claim did not survive the death of Ms. Pereida and the claim was dismissed.

negligent misrepresentation claims. The court awarded examplary damages of $536,934.00 against PCA and PCI each, assessed both $268,467.00 as their share of the exemplary damages on the common law fraud claim. The court awarded Pereida $1,610,802.00 on the RICO claim and awarded reasonable attorney's fees of $280,190.00 against Anthony and PCA.[5]  Judge Ramos also found Anthony personally liable under a piercing the corporate veil theory. Paul, as a minority owner was not found liable under a piercing the corporate veil theory.

47.     On December 12, 2016, Malvino filed his election of remedies and a final judgment was docketed against PCA, PCI and Anthony in the sum of $1,073,868.00 without interest.

48.     On January 23, 2018, foreign judgment obtained in the Malvino Action was docketed in the Supreme Court for the State of New York, Suffolk County with a current outstanding balance of $1,337,201.08. To date, defendants have failed to pay this judgment and the $1,337,201.08 remains due and owing.

49.     Upon information and belief, Anthony is still engaged in the numismatic industry using new corporate identities.

50.     Upon information and belief, PCA is past due on its bi-annual filings with the New York Secretary of State.

51.     Upon information and belief, PCA has not filed a tax return with New York State tax returns since 2015, PCA has not filed a return for 2016 and 2017 return in not yet due. It is believed that PCA has been inactive.

52.     According to Anthony's testimony at his April 11, 2014 deposition, PCI was sold by Anthony prior to his deposition.

---

[5] An appeal was taken by defendants and the Fifth Circuit ultimately vacated the ruling on the RICO claim, but left the remainder of Judge Ramos' decision intact.

53. Upon information and belief, Anthony does not maintain bank accounts in the name he gave at his April 11, 2014 deposition. *See* Anthony Dep. at 5:9-13. Upon information and belief, Anthony has used different variations of his surname, such as Dell Universita and Dellauniversita among others. The variations in his name, coupled with providing inaccurate information to banking institutions is designed to hinder, delay and defraud his creditors and frustrate collection of judgments.

54. Upon information and belief, on September 19, 1996, Anthony J. Delluniversita filed a joint petition in bankruptcy in the Eastern District of New York with his wife under the names Anthony J. and Gail D. Universita, Case No. 96-086022.

55. Upon information and belief, Paul is no longer in the numismatic business. He is currently an Allstate insurance broker in the town of North Babylon, New York.

56. Yet Paul still poses as a risk for fraudulent activity. For example, while under oath in the Malvino Action he stated that his name was Paul Anthony Delluniversita. *See* Dep. at 5:17-22. He applied for and was granted a license to be an insurance agent/broker in New York under a different name—Paul J. Dellauniversita. In addition, he fraudulently represented to the State of New York Department of Financial Services under the penalty of perjury that "[s]ince execution and filing of last application, **are you currently a party to**, or have you been found liable in **any lawsuit, arbitration or mediation proceeding involving allegations of fraud,** misappropriation or conversion of funds, misrepresentation or breach of fiduciary duty?" (emphasis added). For each renewal of each license he holds in New York state, Paul answered this question in the negative, although the Malvino Action had been pending over several bi-annual renewal periods (2012-2015). The variations in name used by Paul is designed to hinder,

11

delay and defraud creditors and prevent New York State from conducting a through investigation to Paul's past business practices.

57.    In addition, there are several badges of fraud present here which gives rise to an inference of the defendants' intent to hinder, delay, or defraud plaintiff, including transfer real property among family members, which were for inadequate or no consideration, were made after the Malvino Action was commenced and just prior to Judge Ramos' Findings of Fact and Conclusions of Law resulting in a significant judgment against Anthony, PCA and PCI.

## FIRST CAUSE OF ACTION
(Fraudulent Conveyance-DCL §273-a)

58.    Plaintiff repeats and realleges each of the foregoing allegations as if set forth in paragraphs 1 to 57- fully herein.

59.    The judgment debtor, Anthony is justly indebted to the Plaintiff.

60.    On or about May 12, 2015, judgment debtor, Anthony and his wife, Gail A. Delluniversita fraudulently transferred their home located at 56 Easton Avenue, North Babylon, New York to a Trust for the Benefit of Gail A. Delluniversita without fair or reasonable consideration, weeks before the United States District Court for the District of Texas issued its Findings of Fact and Conclusions of Law in the Malvino Action.

61.    This conveyance was made while judgment debtor, Anthony was a defendant in the Malvino Action, which sought money damages from defendants in that proceeding.

62.    Judgment debtor, Anthony has failed to satisfy the judgment obtained in the Malvino Action in whole or part.

12

## SECOND CAUSE OF ACTION
(Fraudulent Conveyance-DCL §273-a)

63.     Plaintiff repeats and realleges each of the foregoing allegations as if set forth in paragraphs 1 to 62 fully herein.

64.     The judgment debtors, Anthony and PCA are justly indebted to the Plaintiff.

65.     Based upon sworn admissions given during his deposition on April 11, 2015, Paul testified that he took 40% of the profits out of PCA on a weekly basis without fair consideration.

66.     Based upon Paul's sworn testimony in the Malvino Action he was fraudulently withdrawing his 40% interest in the profits of PCA while named as a defendant with Anthony, PCA and PCI in the Malvino Action.

67.     These conveyances were made while Paul and judgment debtors, PCA and Anthony were defendants in the Malvino Action which sought money damages from defendants in that proceeding.

68.     Judgment debtors, Anthony and PCA have failed to satisfy the judgment in the Malvino Action in whole or part.

## THIRD CAUSE OF ACTION
(Fraudulent Conveyance-DCL §§276 & 276-a)

69.     Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 to 68 as if set forth fully herein.

70.     The judgment debtor, Anthony is justly indebted to the Plaintiff.

71.     On or about May 12, 2015, judgment debtor, Anthony and his wife, Gail A. Delluniversita caused real property located at 56 Easton Avenue, North Babylon, New York 11703 to be transferred to a Living Trust in the Benefit of Gail A. Delluniversita.

13

72.     The real property had value to Anthony which Plaintiff could have realized a portion of its claim from.

73.     The transfer of the real property on or about May 12, 2015 was done with actual intent to hinder, delay or defraud creditors, especially Plaintiff who was the assignee of the judgment ultimately obtained by Malvino in the Malvino Action, while the parties were awaiting the court's Findings of Fact and Conclusions of Law, which was issued eight (8) days after the transfer.

### FOURTH CAUSE OF ACTION
(Fraudulent Conveyance-DCL §§276 & 276-a)

74.     Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 to 73 as if set forth fully herein.

75.     The judgment debtors, Anthony and PCA are justly indebted to the Plaintiff.

76.     Based upon sworn admissions given during his deposition on April 11, 2015, Paul testified that he took 40% of the profits out of PCA on a weekly basis. The profits taken by Paul had value to PCA, out of which creditors could have realized a portion of its claim.

77.     Based upon Paul's sworn testimony in the Malvino Action he was fraudulently transferring and withdrawing his 40% interest in the profits of PCA while named as a defendant with Anthony, PCA and PCI in the Malvino Action.

78.     The weekly transfers or withdrawals of profits by Paul was done with actual intent to hinder, delay or defraud creditors, especially Plaintiff, as the assignee who was litigating the Malvino Action while these fraudulent transfers were taking place.

14

79.     Based upon Paul's sworn testimony in the Malvino Action he was fraudulently withdrawing his 40% interest in the profits of PCA while named as a defendant with Anthony, PCA and PCI in the Malvino Action.

## FIFTH CAUSE OF ACTION
(Fraudulent Conveyance-DCL §273-a)

80.     Plaintiff repeats and realleges each of the foregoing allegations as if set forth in paragraphs 1 to 79 fully herein.

81.     The judgment debtors, Anthony and PCA are justly indebted to the Plaintiff.

82.     Based upon sworn admissions given during his deposition on April 11, 2015, Anthony testified that he took 60% of the profits out of PCA on a weekly basis without fair consideration.

83.     Based upon Anthony's sworn testimony in the Malvino Action he was fraudulently withdrawing his 60% interest in the profits of PCA while named as a defendant with Paul, PCA and PCI in the Malvino Action.

84.     These conveyances were made while he and judgment debtors, PCA and PCI and Paul were defendants in the Malvino Action which sought money damages from defendants in that proceeding.

85.     Judgment debtors, Anthony and PCA have failed to satisfy the judgment in the Malvino Action in whole or part. Anthony testified that he took 60% of the profits out of PCA on a weekly basis without fair consideration.

86.     Based upon Anthony's sworn testimony in the Malvino Action he was fraudulently withdrawing his 60% interest in the profits of PCA while named as a defendant with Paul, PCA and PCI in the Malvino Action.

15

87.     These conveyances were made while he and judgment debtors, PCA and PCI and Paul were defendants in the Malvino Action which sought money damages from defendants in that proceeding.

88.     Judgment debtors, Anthony, PCA and PCI have failed to satisfy the judgment in the Malvino Action in whole or part.

## SIXTH CAUSE OF ACTION
(Fraudulent Conveyance-DCL §§276 & 276-a)

89.     Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 to 88 as if set forth fully herein.

90.     The judgment debtors, Anthony, PCA and PCI are justly indebted to the Plaintiff.

91.     Based upon sworn admissions given during his deposition on April 11, 2015, Anthony testified that he took 60% of the profits out of PCA on a weekly basis. The profits taken by Anthony had value to PCA, out of which creditors could have realized a portion of its claim.

92.     Based upon Anthony's sworn testimony in the Malvino Action he was fraudulently transferring and withdrawing his 60% interest in the profits of PCA while named as a defendant with Paul, PCA and PCI in the Malvino Action.

93.     The weekly transfers or withdrawals of profits by Anthony was done with actual intent to hinder, delay or defraud creditors, especially Plaintiff, as the assignee who was litigating the Malvino Action while these fraudulent transfers were taking place.

94.     Based upon Anthony's sworn testimony in the Malvino Action he was fraudulently withdrawing his 60% interest in the profits of PCA while named as a defendant with Paul, PCA and PCI in the Malvino Action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Steven, Baldo & Lighty, PLLC respectfully prays that this Court enter judgment in its favor and against Defendants, Anthony J. Delluniversita and Paul A. Delluniversita, and:

A.     Award that the conveyance of the real property located at 56 Easton Avenue, North Babylon, New York 11703 dated May 12, 2015 be deemed a fraudulent conveyance and that the property be returned to Anthony J. Delluniversita to be subject to enforcement proceedings by Plaintiff;

B.     Award Plaintiff an accounting for all profits removed by Anthony J. Delluniversita and Paul A. Delluniversita from PCA Collectibles, Inc. from December 21, 2012 to present damages;

C.     Award Plaintiff turnover of all profits fraudulently conveyed by Anthony J. Delluniversita and Paul A. Delluniversita from PCA Collectibles, Inc from December 21, 2012 to present;

D.     Award Plaintiff his reasonable attorney's fees and costs;

E.     Award Plaintiff prejudgment and post-judgment interest; and

F.     Award Plaintiff such other and further relief as the Court may deem just and proper.

17

## DEMAND FOR JURY

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: March 15, 2018

Respectfully submitted,

Kenneth G. Walsh (KW-1654)
Law Offices of Kenneth G. Walsh
100 S. Bedford Road, 3rd Fl.
Mt. Kisco, New York 10549
(929) 241-7307
kwalsh@kgwalshlegal.com

18