UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVENS BALDO & LIGHTY, PLLC, | : |
| | : |
| Plaintiff, | :Civil Action No. 2:18-CV-1600-JMA-AKT |
| | : |
| v. | : **SECOND AMENDED COMPLAINT** |
| | : |
| ANTHONY J. DELLUNIVERSITA, | : **Jury Trial Demanded** |
| PAUL A. DELLUNIVERSITA, | : |
| KELLY WALSH, ANTHONY P. | : |
| DELLUNIVERSITA, GAIL A. | : |
| DELLUNIVERSITA, INDIVIDUALLY AND AS | : |
| THE TRUSTEE OF THE GAIL A. | : |
| DELLUNIVERSITA LIVING TRUST, | : |
| PCI COIN GRADING, INC., AND | : |
| PCA COLLECTIBLES, INC., | : |
| | : |
| Defendants. | : |
| | : |

Plaintiff, Stevens Baldo & Lighty, PLLC ("Stevens Baldo" or "Plaintiff"), by and

through their attorney, Kenneth G. Walsh, as and for their Second Amended Complaint against

Defendants, Anthony J. Delluniversita ("Big Anthony"), Paul A. Delluniversita ("Paul"), Kelly

Walsh ("Walsh"), Anthony P. Delluniversita ("Attorney Delluniversita"), Gail A. Delluniversita,

individually and as the Trustee of the Gail A. Delluniversita Living Trust, (collectively "Gail"),

PCI Coin Grading, Inc. ("PCI") and PCA Collectibles, Inc. ("PCA") hereby alleges as follows:

## SUMMARY OF THE ACTION

1.     This is an action to recover a series of fraudulent conveyances and to collect an

unpaid, registered judgment originally entered in the matter entitled *Albert P. Malvino,*

*Representative of the Estate of Bonnie Pereida, Deceased v. Paul A. Delluniversita, et al.,*

No.2:12-cv-401 (S.D.TX.) ("Malvino") in the amount of $1,337,201.08.[1]  While the Malvino
Action was pending, the Delluniversitas systematically stripped PCA of its assets through a
series of fraudulent transfers to make Big Anthony and PCA judgment proof.

2.      First, the day after an adverse decision was entered against defendants in the
Malvino Action, Big Anthony, Gail and Attorney Delluniversita executed a deed which
transferred the only real property Big Anthony had in New York to a Living Trust for the Benefit
of Gail.  Gail and Attorney Delluniversita participated in this fraudulent transfer to take Big
Anthony's name off the deed in an attempt to put it beyond the reach of creditors.  Second, Paul
as the CEO and President of PCA systematically dispersed over 1.2 million dollars of PCA funds
to and for the benefit of the Delluniversitas.  PCA was used as a mechanism to conduct the coin-
fraud and distribute the ill-gotten gains by Big Anthony and Paul.

3.      These intrafamily transfers were fraudulent because they lacked fair
consideration, were devoid of good faith by the transferor(s) and/or the transferee(s), occurred
while the Malvino Action was pending or shortly before the case was commenced, and PCA,
PCI and Big Anthony have failed to satisfy the judgment obtained in the Malvino Action. In
addition, Paul as the signatory on PCA's checking account at TD Bank intentionally dispersed
and distributed PCA's funds which should have been retained to by PCA to pay creditors,
including the impending judgment in the Malvino Action. These transfers were designed with the
assistance of counsel to remove Big Anthony's name from the deed of his home and strip PCA
of its assets with the actual intent to defraud creditors like the Estate of Bonnie Pereida before a
judgment could be docketed against them.

---

[1] The Malvino judgment has now been domesticated in the Supreme Court of the State of New York, Suffolk
County. *Albert P. Malvino, Representative of the Estate of Bonnie Pereida, Deceased v. Paul A. Delluniversita, et
al.*, Index No. 601594/2018 (Sup. Suffolk Co.) ("State Court Proceeding").

4.     The Malvino Action involved fraud by Big Anthony, Paul and two companies that they owned and controlled: PCA Collectibles, Inc. ("PCA") and PCI Coin Grading Inc. ("PCI"). Big Anthony fraudulently mis-graded gold and silver coins by PCI, which were then sold to largely elderly customers through PCA.

5.     PCI, owned by Big Anthony, fraudulently graded coins, giving them a higher grade or value than the coins' warranted. PCA, owned by Paul and Big Anthony, sold the coins to unsuspecting customers using high pressure, unsolicited telemarketing techniques. The telemarketers targeted elderly customers, such as Bonnie Pereida.

6.     Over a five-month span (January 20, 2011 to May 2011), Bonnie Pereida purchased purportedly rare coins from PCA. During this period, PCA sold Ms. Pereida 135 grossly overvalued and overpriced coins in transactions ranging in size from $1,595.00 to $122,500.00. In all, Ms. Pereida paid $727,569.00 to PCA for fraudulently mis-graded coins. The evidence presented at trial in the Malvino Action established that the coins sold to Ms. Pereida were worth less than $200,000.

7.     While Big Anthony, Paul, PCI and PCA were defendants in the Malvino Action, Big Anthony, Paul and PCA fraudulently transferred: (i) real property located at 56 Easton Ave., North Babylon, NY 11703 to a Living Trust for the Benefit of Gail A. Delluniversita; (ii) Big Anthony and Paul swept the profits out of PCA on a weekly basis; (iii) systematically disbursed hundreds of thousands of dollars of PCA funds to Delluniversita family members; (iv) purchased and leased BMWs, Lincoln and Mercedes-Benz cars; (v) funded retirement accounts for Big Anthony and Gail at Mass Mutual with PCA funds and (vi) used PCA funds to pay personal expenses including, but not limited to tax obligations, health insurances and meals with actual

3

intent to hinder, delay or defraud either present or future creditors and left PCA undercapitalized, so as to frustrate creditors ability to satisfy judgments.

## THE PARTIES

8.      Plaintiff Stevens Baldo & Lighty, PLLC is a professional limited liability company created under the laws of Texas with its principal place of business at 550 Fannin Street, Suite 700, Beaumont, Texas.  Stevens Baldo & Lighty, PLLC is the assignee of the Judgment obtained by Ms. Pereida's estate against Defendants.

9.      Defendant Anthony J. Delluniversita, resides at 56 Easton Avenue, North Babylon, New York 11703.  Upon information and belief, Big Anthony is still in the numismatic business.

10.     Defendant Paul A. Delluniversita, resides at 428 Myrtle Avenue, West Islip, New York 11795. Upon information and belief, Paul is still in the numismatic business.

11.     Defendant Anthony P. Delluniversita is an attorney licensed in the State of New York and was until December 2018 a partner at the Law Offices of Michael J. Alber, P.C.  He currently maintains an office at 2 W Main Street SE3, Bay Shore, New York 11706.

12.     Defendant Kelly Walsh, resides at 428 Myrtle Avenue, West Islip, New York 11795. She is married to Paul.

13.     Defendant Gail A. Delluniversita, resides at 56 Easton Avenue, North Babylon, New York 11703 and is the wife of Big Anthony and the mother of Attorney Delluniversita and Paul. She is also the trustee of the Living Trust for the Benefit of Gail A. Delluniversita.

14.     Defendant PCI Coin Grading, Inc., is a corporation formed under the laws of the State of Florida with its principal place of business at 1730 South Federal Highway, Delray

4

Beach, Florida 33483. Its current mailing address is Dennis Daidone, 3280 Sunrise Highway, Suite 165, Wantagh, New York 11793.

15.    Defendant PCA Collectibles, Inc., is a New York corporation which previously maintained its principal place of business at 1045 Route 109, STE 100, Lindenhurst, New York, 11757. According to New York State Department of State, Division of Corporation's website, Paul is listed as PCA's CEO.

## THE JUDGMENT DEBTORS

16.    As detailed below, after trial on the merits in the Malvino Action, PCA and PCI were found liable to Ms. Pereida for the principal sum of $1,337,201.08 together with interest from December 12, 2007.  Big Anthony was found to be personally liable for PCA and PCI's portions of the damages.

17.    The judgment debtor, PCA is a New York corporation with its former principal place of business at 1045 Route 109, Suite 100, Lindenhurst, New York 11757.  PCA was formed by Paul A. Delluniversita as the chief executive officer and registered agent.

18.    The judgment debtor, PCI is a Florida corporation with its former principal place of business in Delray Beach, Florida.

19.    The judgment debtor, Big Anthony resides at 56 Easton Avenue, North Babylon, New York, a property he fraudulently transferred to a Living Trust for the Benefit of Gail A. Delluniversita, his wife.  Big Anthony still enjoys the use of said property and retains control of the property, even though his name does not appear on the title.

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) as

Plaintiff and Big Anthony, Paul, Attorney Delluniversita, Walsh, Gail, PCI and PCA are

citizens/corporations of different states and the amount in controversy exceeds $75,000.00,

exclusive of interest, costs and attorneys' fees.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that a

substantial part of the events or omissions giving rise to Plaintiff's claims occurred in New York,

and Big Anthony, Paul, Attorney Delluniversita, Walsh, Gail, PCI and PCA are subject to

personal jurisdiction in this Court with respect to the claims alleged herein.

## BACKGROUND

22.     Ms. Pereida, was a Corpus Christi, Texas resident, who had been a stockbroker

for 51 years and was the first vice president of the Corpus Christi branch of Merrill Lynch.

23.     After the market crash of 2008, Ms. Pereida decided to invest in rare coins as a

way to protect her assets against inflation.  In 2010, Ms. Pereida began purchasing rare coins. At

this time, Ms. Pereida was approximately 76 years old and in declining health as a result of a

stroke.

24.     Upon information and belief, Big Anthony and PCA purchased leads from Kevin

McNerney and others.  Big Anthony, Paul and PCA used these names to target their customers.

25.     Beginning in January 2011, Ms. Pereida received unsolicited telephone calls from

PCA telemarketers.  After making her first purchase from PCA on January 20, 2010, PCA called

her on a weekly and sometimes a daily basis representing that she "needed the coins to round out

and collect her collection(s)" and that she was "getting a good deal." PCA's sales representatives convinced Ms. Pereida to purchase as many coins as possible.[2]

26.     From January through May 2011, Ms. Pereida made 31 separate purchases of coins from PCA. Ms. Pereida purchased a total of 135 coins from PCA for a total of $727,560.00.

***Representations Made for Each Transaction***

27.     After each purchase, PCA sent Ms. Perieda an invoice through the United States Postal Service which listed the coins purchased. Each invoice provided the sale price and the description and grade of each coin as determined by "independent third-party" grader PCI.

28.     Each invoice stated that "[a]ny item not found to be satisfactory[] must be returned by the 15[th] day of receipt. After that all sales are final. All items are guaranteed to be authentic."

***How Judgment Debtors Perpetrated the Scheme to Systematically Over-Graded Coins***

29.     On January 20, 2011, when Pereida made her first purchase from PCA, they sent her a numismatic guide book, commonly known as the "Red Book." The Red Book sets forth the estimated value of coins based on their grade level.

30.     Malvino and Pereida used the Red Book to assess the value of the PCA coins based on the grades established by the purported independent grader as indicated on PCA's invoices.

31.     With every purchase, PCA's invoice represented the purchase price and description and grade of each coin as determined by "independent third party" grader. It did not

---

[2] Many of the facts asserted herein are taken directly from Judge Ramos' Findings of Fact and Conclusions of Law in the Malvino Action.

disclose the grader was PCI, a company owned by the majority shareholder of PCA—Big Anthony.

32.     Each invoice also stated that "[a]ny item found not to be satisfactory[] must be returned by the 15th day of receipt. After that all sales are final. All items are guaranteed to be authentic."

33.     These representations lulled Malvino and Pereida into a false sense of security. Because when they compared the representations on the invoice to the values listed in the Red Book, they believed that they were getting very good prices on the coins sold by PCA.

34.     But just like the victims in the Madoff scandal, the representations on the invoices were made up. Big Anthony purchased coins through PCA, the coins were graded by PCI, owned and controlled by Big Anthony free of charge to PCA. The coins were then sold by PCA also owned by Big Anthony and his son Paul, so there was no independent grader. The grades assigned to the coins were made up to grossly inflate their value. After assigning each coin a grade, Big Anthony priced it on PCA's invoice according to the value in the *Coin Dealer Newsletter*, more commonly known as the "Grey Sheet." This would show that a coin sold to Perieda would be more valuable when she referenced it in the Red Book. The Red Book was given to Pereida to reinforce the sense she was receiving a deal and not to question the authenticity of the coins or their grading until the fifteen days expired and the sales became final. Essentially, the representations on the invoice prepared by PCA was as phony as a Bernie Madoff account statement from 2007. PCA never disclosed to Perieda that the grader was not independent, that the coins were not authentic, in fact one coin was counterfeit and all were mis-graded to inflate their value.

8

35.     After Ms. Pereida died in October of 2011, Malvino was appointed executor of her estate.

### *Discovery of the Fraud*

36.     Malvino, after becoming executor of Ms. Pereida's estate, retained Heritage Auction Appraisal Services, Inc. ("Heritage"), one of the nation's leading and largest coin valuation and auctioning companies. Heritage conducted an appraisal of Ms. Pereida's coins.

37.     According to Heritage, the fair market value of the coins as of October 29, 2011, was $190,865.00---26.2% of the amount paid by Ms. Pereida.  Heritage reviewed PCI's "grading" on the coins and concluded that PCI over graded coins, as well as PCA selling a counterfeit coin and improperly assigning "grades" to coins that did not qualify for "grading" because they were damaged or "cleaned" – not in original condition.

38.     After obtaining this appraisal, Malvino retained another expert, Paul Montgomery ("Montgomery") to assess the grade and value of each coin.

39.     Montgomery's findings were generally consistent with those of the Heritage. Montgomery concluded that the reasonable retail value of the coins was $150,964.00 at the time Pereida purchase them from PCA -- 20.8% of the amount she paid.

40.     Montgomery also found a consistent pattern of over grading, including a pattern of over grading to take advantage of dramatic changes in the valuation for small grade variations. He graded each coin lower than PCI did, with some being graded 19 to 23 levels lower.

41.     Like Heritage, Montgomery identified a counterfeit coin. He also identified 25 coins that were ungradable because they were either cleaned or damaged.

42.     Montgomery requested another appraisal to verify his conclusions. Professional Coin Grading Service ("PCGS") conducted the appraisal.

9

43.     PCGS's findings were consistent with those of Montgomery. It also assessed

every coin at lower grade level that PCI did, and it agreed with Montgomery that 26 of the 135

coins were ungradeable because of their condition or lack of authenticity.

### Lawsuit Commenced Against PCA, PCI, Paul & Big Anthony

44.     On or about December 21, 2012, Malvino commenced an action in the United

States District Court for the District of Texas, Corpus Christi Division alleging *inter alia* mail

and wire fraud under § 1962(c) and conspiracy under § 1962(d) under the Racketeer Influenced

and Corrupt Organization Act ("RICO"), violation of the Texas Deceptive Trade Practices Act

("DTPA"); common law fraud, negligent misrepresentation and common law civil conspiracy

arising out of Pereida's purchase of coins from Paul, Big Anthony, PCA and PCI.

### Admission of a Fraudulent Conveyance

45.     During the course of discovery in the Malvino Action, Paul admitted at his

deposition on April 11, 2014 that he works at PCA, and that he and his father swept out the

profits of PCA on a weekly basis. *See* Paul Dep. at 15:23-25.

46.     On April 11, 2014, Big Anthony to was deposed in the Malvino Action.  Big

Anthony testified that he and Paul distributed the profits of PCA on a weekly basis at a 60/40

split to him and Paul, respectively, per an agreement they had.  *See* Anthony's Dep. at 9:11-22.

47.     Paul and Big Anthony were represented at their April 11, 2014 depositions in the

Malvino Action by Attorney Delluniversita from the firm of Raiser & Kenniff, PC.

48.     Thereafter, Attorney Delluniversita went to work for the Law Offices of Michael

J. Alber.  While at this firm, he registered as counsel for Paul in the Malvino Action on the

court's ECF system.

10

49.     During the four years that the Malvino Action was pending (2012-2016), Big

Anthony and Paul were defendants in the Malvino Action, an action for monetary damages,

Anthony and Paul directed that PCA fraudulently transfer and distribute the "profits" to

themselves on the basis of a 60/40 percent split on a weekly basis. This stripped PCA of its

assets making it effectively unable to meet the bills that were coming when people demanded

refunds for the fraudulent coin sales or when judgments were imminent.

### *Defrauded Others Using the Same Mis-grading Scheme*

50.     During discovery in the Malvino Action, defendants produced other complaints

that demonstrated that they had similarly defrauded other customers out of several hundreds of

thousands of dollars.

51.     For example, documents produced indicated that they defrauded Kenneth

Campbell of Arizona who was taken for approximately $38,000 in August 2012, using a similar

mis-grading scheme. According to a complaint filed with the Arizona Attorney General's

Office, Big Anthony met Mr. Campbell in a parking lot at the Phoenix Airport to sell him coins.

Mr. Campbell reviewed the coins, accepted the coins and received a PCA invoice identifying the

coins, all of which PCI graded 63 or higher. Mr. Campbell gave Big Anthony a cashier's check

for $45,000. Big Anthony returned to New York.

52.     On information and belief, when Mr. Campbell took the coins to a dealer in

Phoenix, the appraiser informed him the coins were worth $8,000, not the $45,000 he had paid.

53.     Upon information and belief, Big Anthony, PCA and Paul never returned any of

Mr. Campbell's telephone calls or correspondence concerning the mis-grading and inflated

values of the coins he was sold.

11

54.     Similarly, on information and belief, PCA sold Mr. James D. Arthur coins it represented were worth $700,000 over a two plus year period -- from 2010 to 2012.  On information and belief, Mr. Arthur's complaint to the South Dakota's Attorney General's Office alleged that PCA systematically over graded coins sold to Mr. McArthur, as well as selling counterfeit coins.  An appraisal showed that these coins were worth perhaps $70,000 to $105,000, rather than the $700,000 PCA valued and sold the coins for.

55.     On November 17, 2014, a bench trial was held before United States District Court Judge, Neva Gonzales Ramos in the Southern District of Texas, Corpus Christi Division.

56.     PCA, PCI, Big Anthony and Paul defended their practices by asserting that the numismatic industry is subjective, and that no two graders will assign the same grade to a coin. But the court rejected this defense, noting in its Findings of Fact and Conclusions of Law dated May 20, 2015 that: "[Big] Anthony had no formal training as a coin grader, had not attended a coin grading program, and did not rely on consensus grading."  *Id*. at ¶ 43. Further, the court found that "[t]he assessments by PCGS [Professional Coin Grading Service] and Montgomery [of the Pereida coins sold by PCA] were within two grade levels of each other for a majority of the coins and nearly 90% of the assessments were within three grades levels of each other." *Id.* at ¶ 41.  These served as indicia of fraud.

### *Conveyance of Real Property*

57.     On May 20, 2015, Judge Ramos found in favor of Malvino on almost each count.[3] The court awarded damages of $536,934.00 for economic damages for the common law fraud and negligent misrepresentation claims.  The court awarded examplary damages of $536,934.00 against PCA and PCI each, assessed both $268,467.00 as their share of the exemplary damages

---

[3] The Texas Deceptive Trade Practice claim did not survive the death of Ms. Pereida and the claim was dismissed.

on the common law fraud claim. The court awarded Pereida $1,610,802.00 on the RICO claim
and awarded reasonable attorney's fees of $280,190.00 against Big Anthony and PCA.[4]   Judge
Ramos also found Big Anthony personally liable under a piercing the corporate veil theory.
Paul, as a minority owner was not found liable under a piercing the corporate veil theory.

58.     The very next day, on May 21, 2015, Attorney Delluniversita, Big Anthony and
Gail transferred their property which was owned by all three at 56 Easton Avenue, North
Babylon, New York 11703 ("North Babylon Property") to a Living Trust for the Benefit of Gail
A. Delluniversita to protect the property before a judgment could be entered.  The Delluniversita
signatures were notarized by Ronald T. Alber, Esq., of counsel to the Law Offices of Michael P.
Alber, P.C. the day after the adverse decision in the Malvino Action.  At the time of this
fraudulent conveyance, Attorney Delluniversita was of counsel to the firm.  Nine months later,
Attorney Delluniversita was made a partner at the Law Offices of Michael J. Alber on or about
February 24, 2016 according to an article in New York Newsday.

59.     On December 12, 2016, Malvino filed his election of remedies and a final
judgment was docketed against PCA, PCI and Big Anthony in the sum of $1,073,868.00 without
interest.

60.     On January 23, 2018, foreign judgment obtained in the Malvino Action was
docketed in the Supreme Court for the State of New York, Suffolk County with a current
outstanding balance of $1,337,201.08.  To date, defendants have failed to pay this judgment and
the $1,337,201.08 remains due and owing.

61.     Thereafter, Plaintiff sought enforce the judgment in the State Court Proceeding
by, *inter alia,* duly serving Big Anthony, Gail and Attorney Delluniversita with the following: (i)

---

[4] An appeal was taken by defendants and the Fifth Circuit ultimately vacated the ruling on the RICO claim, but left
the remainder of Judge Ramos' decision intact.

restraining notices; (ii) subpoena *duces tecum ad testifcandum* on Big Anthony and Gail and (iii) information subpoena on Attorney Delluniversita (collectively, the "Enforcement Devices").

62.     Big Anthony, Gail and Attorney Delluniversita failed to respond to any of the Enforcement Devices in the State Court Proceeding.

63.     On April 11, 2018, an Order to Show Cause was entered in the State Court Proceeding to hold Big Anthony, Gail and Attorney Delluniversita in contempt.

64.     The Order to Show Cause was returnable on May 10, 2018 and there was no appearance by any of the Delluniversitas or counsel on their behalf.

65.     On March 15, 2019, an order was entered against Big Anthony, Gail and Attorney Delluniversita requiring them to comply with the previously served Enforcement Devices or be held in contempt by the Supreme Court of Suffolk County.

66.     Big Anthony and Gail continue to float the authority of the courts and the judicial process. Although Big Anthony and Gail have been served with restraining notices under CPLR §5222, they are actively attempting to dissipate assets.

67.     On or about January 24, 2019, Big Anthony and Gail listed their apartment located at 806 E. Windward Way, Apt. 203, Lantana, Florida 33462 ("Lantana Property") for sale with Lang Realty.

68.     Defendants have refused to answer and have delayed this proceeding in the hopes of dissipating the Lantana Property before they would be compelled to disclose their assets. Defendants inactivity in the proceeding at bar and the State Court Proceeding, coupled with their attempts to sell the Lantana Property were designed with the actual intent to hinder, delay and defraud creditors.

69.     By refusing to comply with the Enforcement Devices, Big Anthony, Gail and
possibly Attorney Delluniversita are continuing their efforts to frustrate the enforcement of the
Malvino Action judgment.

*Plaintiff Obtains Information on PCA's Checking Account*

70.     However, Plaintiff served a subpoena on PCA's former counsel in New York that
represented them in the Malvino Action and received a response. Attorney Delluniversita's
former law firm, Raiser & Kenniff, P.C. produced a copy of PCA's check they had received as
payment for legal services for defending Big Anthony, Paul, PCA and PCI in the Malvino Action
in Texas.  Plaintiff was able to locate PCA's checking account at TD Bank.

71.     On April 9, 2018, Plaintiff served a subpoena on TD Bank.  Thereafter, TD Bank
responded and provided a treasure trove of information:  over 5,200 checks issued from PCA's
accounts with Paul's signature on each item over a four year period (2012-2016) while the
Malvino Action was pending.  These checks provide a roadmap to how Big Anthony and Paul
divided up the proceeds of their fraudulent coin scheme from PCA's accounts to themselves,
their creditors and their family members.

72.     While reviewing the 5,200 items drawn on PCA's account from 2012-2016,
Plaintiff identified 113 checks Paul issued from PCA's TD Bank Account No. XXXXXXX228
payable to Mass Mutual.

73.     Plaintiff then served a subpoena upon Mass Mutual for Accounts Nos.
OSLXXXXXX85 and OSLXXXXXX67.  Mass Mutual responded with several hundred pages
worth of account opening documents and accounts statements on accounts owned by the
Delluniversitas.  It appears that Paul purchased a Mass Mutual Odyssey Select Fixed Annuity

Account OSLXXXXXX85 with PCA funds for the benefit of Big Anthony on or about September 26, 2012, within 90 days of the Malvino Action being commenced.

74.    Based on the responses received from Mass Mutual, Paul also purchased a Mass Mutual Odyssey Select Fixed Annuity Account OSLXXXXXX67 using PCA funds for the benefit of Gail on or about November 15, 2012.  Plaintiff has complied a schedule of 113 checks drawn on PCA's TD Bank account from September 25, 2012 to July 21, 2015 and credited to Mass Mutual Odyssey Select Fixed Annuity Account OSLXXXXXX67 for Gail's benefit. This account was opened 35 days prior to the commencement of the Malvino Action. Annexed hereto as Exhibit A is a schedule of 113 PCA checks payable to Mass Mutual for Accounts Nos. OSLXXXXXX85 and OSLXXXXXX67 from September 25, 2012 to July 21, 2015 for retirement accounts for the benefit of Big Anthony and Gail and incorporated herein by reference.

75.    Now with the benefit of PCA's banking records from TD Bank, Plaintiff has a roadmap of how Paul, as the CEO, President and signatory on the PCA accounts at TD Bank distributed and disbursed over $1.2 million of PCA funds to Big Anthony, Paul, Gail, Attorney Delluniversita, Mass Mutual, taxing authorities, Oxford insurance company ("Oxford"), BMW, Lincoln and Mercedes-Benz and other creditors, while the Malvino Action was pending in an attempt to strip PCA of any assets before judgment could be entered and docketed.

76.    In fact, once Judge Ramos issued her Findings of Fact and Conclusions of Law on May 20, 2015, PCA's banking activities at TD Bank came to an end within months.

77.    Upon information and belief, Big Anthony and Paul are still engaged in the numismatic industry using new corporate identities.

78.     Upon information and belief, PCA is past due on its bi-annual filings with the New York Secretary of State.

79.     Upon information and belief, PCA has not filed a tax return with New York State tax returns since 2015, PCA has not filed a return for 2016 and 2017. It is believed that PCA has been inactive.

80.     According to Big Anthony's testimony at his April 11, 2014 deposition, PCI was sold by Big Anthony prior to his deposition.

81.     Upon information and belief, Big Anthony does not maintain bank accounts in the name he gave at his April 11, 2014 deposition. *See* Anthony Dep. at 5:9-13. Upon information and belief, Big Anthony has used different variations of his surname, such as Dell Universita and Dellauniversita among others. The variations in his name, coupled with providing inaccurate information to banking institutions and the voidable May 21, 2016 transfer of the North Babylon Property and the systematic dispersion of PCA assets while the Malvino Action was pending were designed to hinder, delay and defraud his creditors and frustrate collection of judgments.

82.     In addition, upon information and belief, Big Anthony filters all the proceeds from his current coin sales through accounts controlled by Gail. Gail's accounts at Chase pay for all the living expenses of the family.

83.     The May 21, 2015 fraudulent transfer of the North Babylon Property is disturbing because Attorney Delluniversita and the firm he was with at the time, Law Offices of Michael J. Alber, P.C., participated in this transaction. In fact, Attorney Delluniversita's biography on the firm's website boasts of his defense of the Malvino Action, yet once the inevitable adverse ruling is issued, they actively aided and abetted the violation of the Debtor and Creditor Law. This was

done for no other purpose but to hinder, delay and defraud creditors and frustrate collection of the judgement that was to be entered.

84.    Upon information and belief, Paul took a portion of the proceeds from the fraudulent sales to Ms. Pereida in January and February 2011 and purchased a $425,000 home at 428 Myrtle Avenue, West Islip, New York.

85.    Upon information and belief, Paul is still in the numismatic business.

86.    Prior to opening up PCA, Paul's only job experience according to his April 14, 2014 sworn testimony was in a bagel shop.

87.    As an officer and director of PCA, Paul's participation in the fraudulent conveyances require that a constructive trust be imposed upon his home at 428 Myrtle Avenue, West Islip, New York because it was obtained with funds fraudulently transferred from PCA's accounts.

88.    On or about March 3, 2018, Paul and Walsh listed their house for sale, but it was taken off the market shortly thereafter.

89.    In addition to the foregoing, there are several badges of fraud present here which gives rise to an inference of the defendants' intent to hinder, delay, or defraud plaintiff, including transfer real property among family members, establishing and funding investment accounts with PCA funds for the benefit of Big Anthony and Gail which were for inadequate or no consideration, were made after the Malvino Action was commenced and just after Judge Ramos' Findings of Fact and Conclusions of Law resulting in a significant judgment against Big Anthony, PCA and PCI.

90.     The transfers at issue in this matter are all constructively fraudulent because the conveyances were made without fair consideration, while the Malvino Action was pending and the judgment has never been satisfied.

91.     Moreover, the transferor(s) all had knowledge of the underlying fraud.  Big Anthony had knowledge of the fraudulent scheme to mis-grade coins sold to PCA's customers.  Paul had knowledge of the impending enforceable judgment against PCA or at minimum that the action was pending.  Big Anthony and Attorney Delluniversita had knowledge of the imminent enforceable judgment against PCA and Big Anthony on May 21, 2015, when they transferred their interest in the North Babylon Property.

92.     The transfers at issue in this matter are all actually fraudulent.  The property/checks transferred by PCA, Big Anthony and Paul had value out of which the Malvino Action judgment could have realized a portion of its claim.  PCA and Big Anthony as judgment debtors transferred their property with the actual intent to defraud creditors like Malvino and Plaintiff herein.

## FIRST CAUSE OF ACTION
(Fraudulent Conveyance-DCL §273-a)

93.     Plaintiff repeats and realleges each of the foregoing allegations as if set forth in paragraphs 1 to 92 fully herein.

94.     The judgment debtors, Big Anthony, PCI and PCA are justly indebted to the Plaintiff.

95.     On or about May 21, 2015, judgment debtor, Big Anthony and his wife, Gail and Attorney Delluniversita fraudulently transferred the property located at 56 Easton Avenue, North Babylon, New York to a Trust for the Benefit of Gail A. Delluniversita without fair or reasonable

19

consideration, a day after the United States District Court for the District of Texas issued its

Findings of Fact and Conclusions of Law in the Malvino Action.

96.     This conveyance was made while judgment debtor, Big Anthony was a defendant

in the Malvino Action, which sought money damages from defendants in that proceeding.

97.     Judgment debtors, Big Anthony, PCA and PCI have failed to satisfy the judgment

obtained in the Malvino Action in whole or part.

98.     Based upon the foregoing, Plaintiff is entitled to a judgment declaring that the

May 21, 2015 transfer is void and the North Babylon Property be placed back in Anthony J.

Delluniversita's name to satisfy the Malvino Action judgment.

## **SECOND CAUSE OF ACTION**
(Fraudulent Conveyance-DCL §273-a)

99.     Plaintiff repeats and realleges each of the foregoing allegations as if set forth in

paragraphs 1 to 98 fully herein.

100.    The judgment debtors, Big Anthony PCI and PCA are justly indebted to the

Plaintiff.

101.    Based upon sworn admissions given during his deposition on April 11, 2015, Paul

testified that he took 40% of the profits out of PCA on a weekly basis without fair consideration.

102.    Based upon Paul's sworn testimony in the Malvino Action he was fraudulently

withdrawing his 40% interest in the profits of PCA while named as a defendant with Big

Anthony, PCA and PCI in the Malvino Action.

103.    Paul issued himself 268 checks totaling $330,634.40 while the Malvino Action

was pending and 90 days prior to its commencement. A schedule of such checks is annexed

hereto as Exhibit B and incorporated herein by reference. Paul systematically disbursed PCA's

funds as quickly as they came in because he was aware of the impending enforceable judgment in the Malvino Action.

104.    These conveyances to Paul were made without fair consideration from PCA's account at TD Bank because he knew of the impending enforceable judgment in the Malvino Action.

105.    These conveyances were made while Paul and judgment debtors, PCA, PCI and Big Anthony were defendants in the Malvino Action which sought money damages from defendants in that proceeding.

106.    Judgment debtors, Big Anthony, PCI and PCA have failed to satisfy the judgment in the Malvino Action in whole or part.

107.    Based upon the foregoing, Pail A. Dellinuversita is liable to Plaintiff for the 268 fraudulent transfers totaling $330,634.40.

### THIRD CAUSE OF ACTION
(Fraudulent Conveyance-DCL §§276 & 276-a)

108.    Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 to 107 as if set forth fully herein.

109.    The judgment debtors, PCA, PCI and Big Anthony are justly indebted to the Plaintiff.

110.    On or about May 12, 2015, judgment debtor, Big Anthony, Gail and Attorney Delluniversita caused real property located at 56 Easton Avenue, North Babylon, New York 11703 to be transferred to a Living Trust in the Benefit of Gail A. Delluniversita.

111.    The North Babylon Property had value to Big Anthony which Plaintiff could have realized a portion of its claim from.

112.    The transfer of the North Babylon Property by Big Anthony on or about May 21, 2015 was done with actual intent to hinder, delay or defraud creditors, because it was done the day after Judge Ramos issued her Findings of Fact and Conclusions of Law which found that Big Anthony was going to have a substantial judgment entered against him.

113.    Based upon the foregoing, Plaintiff is entitled to a judgment declaring that the May 21, 2015 transfer is void and the North Babylon Property be placed back in Anthony J. Delluniversita's name to satisfy the Malvino Action judgment.

## FOURTH CAUSE OF ACTION
(Fraudulent Conveyance-DCL §§276 & 276-a)

114.    Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 to 113 as if set forth fully herein.

115.    The judgment debtors, Big Anthony, PCI and PCA are justly indebted to the Plaintiff.

116.    Based upon sworn admissions given during his deposition on April 11, 2015, Paul testified that he took 40% of the profits out of PCA on a weekly basis. The profits taken by Paul had value to PCA, out of which creditors could have realized a portion of its claim. Paul as the CEO, President and signatory on the TD Bank account issued himself 268 checks drawn on PCA's TD Bank account totaling $330,634.40.

117.    The weekly transfers or withdrawals of profits by Paul was done with actual intent to hinder, delay or defraud creditors, especially Plaintiff, as the assignee who was litigating the Malvino Action while these fraudulent transfers were taking place.

118.    As a result of PCA's fraudulent transfer to Paul A. Delluniversita, Plaintiff has been damaged in an amount to be determined at trial, but in no less than $330,634.40.

22

## FIFTH CAUSE OF ACTION
(Fraudulent Conveyance-DCL §273-a)

119.    Plaintiff repeats and realleges each of the foregoing allegations as if set forth in paragraphs 1 to 117 fully herein.

120.    The judgment debtors, Big Anthony, PCI and PCA are justly indebted to the Plaintiff.

121.    Paul as the CEO, President and signatory on PCA's TD Bank accounts issued Gail 156 checks totaling $63,296.47 from September 26, 2012 to August 14, 2015 purportedly for wages without fair consideration. Annexed hereto as Exhibit C is a schedule of said payments to Gail and incorporated herein by reference.

122.    These conveyances were made while PCA was a defendants in the Malvino Action which sought money damages from defendants in that proceeding.

123.    Judgment debtors, Big Anthony, PCI and PCA have failed to satisfy the judgment in the Malvino Action in whole or part.

124.    As a result of PCA's fraudulent transfers to Gail A. Delluniversita, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $63,296.47.

## SIXTH CAUSE OF ACTION
(Fraudulent Conveyance-DCL §§276 & 276-a)

125.    Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 to 124 as if set forth fully herein.

126.    Paul as the CEO, President and signatory on PCA's TD Bank accounts transferred 156 checks totaling $63,296.47 to Gail. The 156 items totaling $63,296.47 issued during the period of September 26, 2012 to August 14, 2015 to Gail by Paul had value to PCA, out of which creditors, such as Plaintiff could have realized a portion of its claim.

23

127. These transfers were made by PCA were done with actual intent to hinder, delay or defraud creditors, especially Plaintiff, as the assignee who was litigating the Malvino Action while these transfers were taking place.

128. As a result of PCA's fraudulent transfers to Gail A. Delluniversita, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $63,296.47.

## SEVENTH CAUSE OF ACTION
(Fraudulent Conveyance-DCL §273-a)

129. Plaintiff repeats and realleges each of the foregoing allegations as if set forth in paragraphs 1 to 128 fully herein.

130. The judgment debtors, Big Anthony, PCI and PCA are justly indebted to the Plaintiff.

131. Paul as the CEO, President and signatory on PCA's TD Bank accounts issued three (3) checks to the Internal Revenue Service on behalf of Anthony J. Delluniversita and Gail A. Delluniversita from January 15, 2013 to April 14, 2015 totaling $73,000. Annexed hereto as Exhibit D is a schedule of said payments to the Internal Revenue Service and incorporated herein by reference. These items were issued by PCA without fair consideration.

132. These conveyances were made while PCA was a defendants in the Malvino Action which sought money damages from defendants in that proceeding.

133. Judgment debtors, Big Anthony, PCI and PCA have failed to satisfy the judgment in the Malvino Action in whole or part.

134. As a result of PCA's fraudulent transfers to the Internal Revenue Service for the benefit of Anthony J. Delluniversita and Gail A. Delluniversita, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $73,000.

24

## EIGHTH CAUSE OF ACTION
(Fraudulent Conveyance-DCL §§276 & 276-a)

135.    Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 to 134 as if set forth fully herein.

136.    Paul as the CEO, President and signatory on PCA's TD Bank accounts transferred three (3) checks totaling $73,000 to the Internal Revenue Service for payment of tax liabilities for Big Anthony and Gail.  The three items totaling $73,000 issued during the period January 15, 2013 to April 14, 2015 to the Internal Revenue Service by Paul had value to PCA, out of which creditors, such as Plaintiff could have realized a portion of its claim.

137.    These transfers were made by PCA were done with actual intent to hinder, delay or defraud creditors, especially Plaintiff, as the assignee who was litigating the Malvino Action while these transfers were taking place.

138.    As a result of PCA's fraudulent transfers to the Internal Revenue Service by Paul as the CEO, President and signatory on PCA's account at TD Bank, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $73,000.

## NINETH CAUSE OF ACTION
(Fraudulent Conveyance-DCL §273-a)

139.    Plaintiff repeats and realleges each of the foregoing allegations as if set forth in paragraphs 1 to 138 fully herein.

140.    The judgment debtors, Big Anthony, PCI and PCA are justly indebted to the Plaintiff.

141.    Paul as the CEO, President and signatory on PCA's TD Bank accounts issued 197 checks to Big Anthony from January 3, 2013 to November 3, 2015 totaling $401,632.81.

Annexed hereto as Exhibit E is a schedule of said payments to Big Anthony and incorporated herein by reference. These items were issued by PCA without fair consideration.

142.    These conveyances were made while PCA was a defendants in the Malvino Action which sought money damages from defendants in that proceeding.

143.    Judgment debtors, Big Anthony, PCI and PCA have failed to satisfy the judgment in the Malvino Action in whole or part.

144.    As a result of PCA's fraudulent transfers to Big Anthony, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $401,632.

**TENTH CAUSE OF ACTION**
(Fraudulent Conveyance-DCL §§276 & 276-a)

145.    Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 to 144 as if set forth fully herein.

146.    Paul as the CEO, President and signatory on PCA's TD Bank accounts transferred 197 checks totaling $401,632.81 to Big Anthony.  The 197 items totaling $401,632.81 were issued during the period January 3, 2013 to November 3, 2015 to Big Anthony by Paul had value to PCA, out of which creditors, such as Plaintiff could have realized a portion of its claim.

147.    These transfers were made by PCA were done with actual intent to hinder, delay or defraud creditors, especially Plaintiff, as the assignee who was litigating the Malvino Action while these fraudulent transfers were taking place.

148.    As a result of PCA's fraudulent transfers to Big Anthony, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $401,632.81.

## ELEVENTH CAUSE OF ACTION
(Fraudulent Conveyance-DCL §273-a)

149.    Plaintiff repeats and realleges each of the foregoing allegations as if set forth in paragraphs 1 to 148 fully herein.

150.    Paul as the CEO, President and signatory on PCA's TD Bank accounts issued 65 checks to BMW, Lincoln and Mercedes-Benz from October 1, 2012 to October 17, 2015 totaling $57,486.65. Annexed hereto as Exhibit F is a schedule of payments made to BMW, Lincoln and Mercedes-Benz and incorporated herein by reference. These items were issued by PCA without fair consideration. Upon information and belief, Big Anthony and Gail own a BMW convertible which they registered in Florida.

151.    These conveyances were made while PCA was a defendants in the Malvino Action which sought money damages from defendants in that proceeding.

152.    Judgment debtors, Big Anthony, PCI and PCA have failed to satisfy the judgment in the Malvino Action in whole or part.

153.    As a result of PCA's fraudulent transfers to BMW, Lincoln and Mercedes-Benz, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $57,486.65.

## TWELFTH CAUSE OF ACTION
(Fraudulent Conveyance-DCL §§276 & 276-a)

154.    Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 to 153 as if set forth fully herein.

155.    Paul as the CEO, President and signatory on PCA's TD Bank accounts transferred 65 checks totaling $57,486.65 to BMW, Lincoln and Mercedes-Benz. The items totaling

27

$57,486.65 issued during the period October 1, 2012 to October 17, 2015 to BMW, Lincoln and Mercedes-Benz by Paul had value to PCA, out of which creditors, such as Plaintiff could have realized a portion of its claim.

156.    These transfers were made by PCA were done with actual intent to hinder, delay or defraud creditors, especially Plaintiff, as the assignee who was litigating the Malvino Action while these fraudulent transfers were taking place.

157.    As a result of PCA's fraudulent transfers to BMW, Lincoln and Mercedes-Benz, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $57,486.65.

## THIRTHEENTH CAUSE OF ACTION
(Fraudulent Conveyance-DCL §273-a)

158.    Plaintiff repeats and realleges each of the foregoing allegations as if set forth in paragraphs 1 to 157 fully herein.

159.    Paul as the CEO, President and signatory on PCA's TD Bank accounts issued 55 checks to various lawyers and law firms to defend and delay creditors so they could continue their fraudulent coin activities, they included McCathern PLLC, Raiser & Kenniff, P.C. and Anthony P. Delluniversita from February 27, 2013 to February 15, 2016 totaling $84,898. Annexed hereto as Exhibit G is a schedule of PCA's payments to various attorneys and incorporated herein by reference. These items were issued by PCA without fair consideration.

160.    These conveyances were made while PCA was a defendants in the Malvino Action which sought money damages from defendants in that proceeding.

161.    Judgment debtors, Big Anthony, PCI and PCA have failed to satisfy the judgment in the Malvino Action in whole or part.

28

162.    As a result of PCA's fraudulent transfers by Paul to McCathern, Raiser &

Kenniff, P.C. and Anthony P. Delluniversita, Plaintiff has been damaged in an amount to be

determined at trial, but in no event less than $84,898.

### FOURTHEENTH CAUSE OF ACTION
(Fraudulent Conveyance-DCL §§276 & 276-a)

163.    Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 to

162 as if set forth fully herein.

164.    Paul as the CEO, President and signatory on PCA's TD Bank accounts transferred

55 checks totaling $84,898 to McCathern, Raiser & Kenniff, P.C. and Anthony P. Delluniversita.

The items totaling $84,898 issued during the period of February 27, 2013 to February 15, 2016,

by Paul had value to PCA, out of which creditors, such as Plaintiff could have realized a portion

of its claim.

165.    These transfers were made by PCA were done with actual intent to hinder, delay

or defraud creditors, especially Plaintiff, as the assignee who was litigating the Malvino Action

while these fraudulent transfers were taking place.

166.    As a result of PCA's fraudulent transfers to McCathern, Raiser & Kenniff, P.C.

and Anthony P. Delluniversita, Plaintiff has been damaged in an amount to be determined at

trial, but in no event less than $84,898.

### FIFTHEENTH CAUSE OF ACTION
(Fraudulent Conveyance-DCL §273-a)

167.    Plaintiff repeats and realleges each of the foregoing allegations as if set forth in

paragraphs 1 to 166 fully herein.

168.     Paul as the CEO, President and signatory on PCA's TD Bank accounts issued 113 checks totaling $80,685 to Mass Mutual to purchase Mass Mutual Odyssey Select Fixed Annuity Account OSLXXXXXX85 for Big Anthony and Mass Mutual Odyssey Select Fixed Annuity Account OSLXXXXXX67 for Gail using PCA funds. The 113 items were issued during the period of September 25, 2012 to July 21, 2015. See Exhibit A for a detailed schedule of the payments to Mass Mutual and incorporated herein by reference. These items were issued by PCA without fair consideration.

169.     These conveyances were made while PCA was a defendants in the Malvino Action which sought money damages from defendants in that proceeding.

170.     Judgment debtors, Big Anthony, PCI and PCA have failed to satisfy the judgment in the Malvino Action in whole or part.

171.     As a result of PCA's fraudulent transfers by Paul to Mass Mutual for the benefit of Big Anthony and Gail, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $80,685.

### SIXTHTEENTH CAUSE OF ACTION
(Fraudulent Conveyance-DCL §§276 & 276-a)

172.     Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 to 171 as if set forth fully herein.

173.     Paul as the CEO, President and signatory on PCA's TD Bank accounts transferred 113 checks totaling $80,685 to Mass Mutual for the benefit of Big Anthony and Gail.  The items totaling $80,685 issued during the period of September 25, 2012 to July 21, 2015, by Paul had value to PCA, out of which creditors, such as Plaintiff could have realized a portion of its claim.

30

174.   These transfers were made by PCA were done with actual intent to hinder, delay or defraud creditors, especially Plaintiff, as the assignee who was litigating the Malvino Action while these fraudulent transfers were taking place.

175.   As a result of PCA's fraudulent transfers to Mass Mutual, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $80,685.

## SEVENTHTEENTH CAUSE OF ACTION
(Fraudulent Conveyance-DCL §273-a)

176.   Plaintiff repeats and realleges each of the foregoing allegations as if set forth in paragraphs 1 to 175 fully herein.

177.   Paul as the CEO, President and signatory on PCA's TD Bank accounts issued four (4) checks totaling $92,440 to the Internal Revenue Service for payment of tax liabilities on behalf of Paul A. Delluniversita and Kelly Walsh from October 19, 2012 to April 14, 2015 using PCA funds. Annexed hereto as Exhibit H is a schedule of said payments from PCA's account to the Internal Revenue Service for the tax obligations of Paul A. Delluniversita and Kelly Walsh and incorporated herein by reference. These items were issued by PCA without fair consideration.

178.   These conveyances were made while PCA was a defendants in the Malvino Action which sought money damages from defendants in that proceeding.

179.   Judgment debtors, Big Anthony, PCI and PCA have failed to satisfy the judgment in the Malvino Action in whole or part.

180.     As a result of PCA's fraudulent transfers by Paul to the Internal Revenue Service for the benefit of Paul A. Delluniversita and Kelly Walsh, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $92,440.

### EIGTHTEENTH CAUSE OF ACTION
(Fraudulent Conveyance-DCL §§276 & 276-a)

181.     Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 to 179 as if set forth fully herein.

182.     Paul as the CEO, President and signatory on PCA's TD Bank accounts transferred four (4) checks totaling $92,440 to the Internal Revenue Service for the payment of tax liabilities for Paul A. Delluniversita and Kelly Walsh.  The items totaling $92,440 issued during the period October 19, 2012 to April 14, 2015, by Paul had value to PCA, out of which creditors, such as Plaintiff could have realized a portion of its claim.

183.     These transfers were made by PCA were done with actual intent to hinder, delay or defraud creditors, especially Plaintiff, as the assignee who was litigating the Malvino Action while these fraudulent transfers were taking place.

184.     As a result of PCA's fraudulent transfers to the Internal Revenue Service, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $92,440.

### NINETHTEENTH CAUSE OF ACTION
(Fraudulent Conveyance-DCL §273-a)

185.     Plaintiff repeats and realleges each of the foregoing allegations as if set forth in paragraphs 1 to 184 fully herein.

186.    Paul as the CEO, President and signatory on PCA's TD Bank accounts issued 16 checks totaling $71,706.41 to Oxford for health insurance premiums from October 10, 2012 to February 3, 2014 using PCA funds. Annexed hereto as Exhibit I is a schedule of PCA checks payable to Oxford for the health insurance of Big Anthony, Gail and Paul and his family and incorporated herein by reference. These items were issued by PCA without fair consideration.

187.    These conveyances were made while PCA was a defendants in the Malvino Action which sought money damages from defendants in that proceeding.

188.    Judgment debtors, Big Anthony, PCI and PCA have failed to satisfy the judgment in the Malvino Action in whole or part.

189.    As a result of PCA's fraudulent transfers by Paul to Oxford, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $71,706.41.

## TWENTH CAUSE OF ACTION
(Fraudulent Conveyance-DCL §§276 & 276-a)

190.    Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 to 189 as if set forth fully herein.

191.    Paul as the CEO, President and signatory on PCA's TD Bank accounts transferred 16 checks totaling $71,701.46 to Oxford. The items totaling $71,706.41 issued during the period October 10, 2012 to February 3, 2014, by Paul had value to PCA, out of which creditors, such as Plaintiff could have realized a portion of its claim.

192.    These transfers were made by PCA were done with actual intent to hinder, delay or defraud creditors, especially Plaintiff, as the assignee who was litigating the Malvino Action while these fraudulent transfers were taking place.

193.    As a result of PCA's fraudulent transfers to Oxford, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $71,706.41.

## TWENTY-FIRST CAUSE OF ACTION
(Fraudulent Conveyance-DCL §273-a)

194.    Plaintiff repeats and realleges each of the foregoing allegations as if set forth in paragraphs 1 to 193 fully herein.

195.    Paul as the CEO, President and signatory on PCA's TD Bank accounts issued four (4) checks totaling $37,363 to New York State for income tax liabilities due and owing from Big Anthony and Gail.  Annexed hereto as Exhibit J is a schedule of PCA's checks payable to New York State for the tax obligations of Big Anthony and Gail and incorporated herein by reference. Said tax payments were made from October 12, 2012 to April 14, 2015 using PCA funds. These items were issued by PCA without fair consideration.

196.    These conveyances were made while PCA was a defendants in the Malvino Action which sought money damages from defendants in that proceeding.

197.    Judgment debtors, Big Anthony, PCI and PCA have failed to satisfy the judgment in the Malvino Action in whole or part.

198.    As a result of PCA's fraudulent transfers by Paul to New York State on behalf of Big Anthony and Gail, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $37,363.

## TWENTY-SECOND CAUSE OF ACTION
(Fraudulent Conveyance-DCL §§276 & 276-a)

199.    Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 to 198 as if set forth fully herein.

200.     Paul as the CEO, President and signatory on PCA's TD Bank accounts transferred four (4) checks totaling $37,363 to New York State on behalf of Big Anthony and Gail. The items totaling $37,363 issued during the period October 12, 2012 to April 14, 2015, by Paul had value to PCA, out of which creditors, such as Plaintiff could have realized a portion of its claim.

201.     These transfers were made by PCA were done with actual intent to hinder, delay or defraud creditors, especially Plaintiff, as the assignee who was litigating the Malvino Action while these fraudulent transfers were taking place.

202.     As a result of PCA's fraudulent transfers to New York State, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $37,363.

**TWENTY-THIRD CAUSE OF ACTION**
(Fraudulent Conveyance-DCL §273-a)

203.     Plaintiff repeats and realleges each of the foregoing allegations as if set forth in paragraphs 1 to 202 fully herein.

204.     Paul as the CEO, President and signatory on PCA's TD Bank accounts issued Five (5) checks totaling $19,234 to New York State for income tax liabilities due and owing from Paul and Kelly Walsh. Annexed hereto as Exhibit K is a schedule of PCA's checks to New York State for the tax obligations of Paul and Walsh and incorporated herein by reference. Said tax payments were made from October 12, 2012 to April 14, 2015 using PCA funds. These items were issued by PCA without fair consideration.

205.     These conveyances were made while PCA was a defendants in the Malvino Action which sought money damages from defendants in that proceeding.

206.     Judgment debtors, Big Anthony, PCI and PCA have failed to satisfy the judgment in the Malvino Action in whole or part.

207.    As a result of PCA's fraudulent transfers by Paul to New York State on behalf of Big Anthony and Gail, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $19,234.

## TWENTY-FORTH CAUSE OF ACTION
(Fraudulent Conveyance-DCL §§276 & 276-a)

208.    Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 to 207 as if set forth fully herein.

209.    Paul as the CEO, President and signatory on PCA's TD Bank accounts transferred five (5) checks totaling $19,234 to New York State on behalf of himself and Kelly Walsh.  The items totaling $19,234 issued during the period October 12, 2012 to April 14, 2015, by Paul had value to PCA, out of which creditors, such as Plaintiff could have realized a portion of its claim.

210.    These transfers were made by PCA were done with actual intent to hinder, delay or defraud creditors, especially Plaintiff, as the assignee who was litigating the Malvino Action while these fraudulent transfers were taking place.

211.    As a result of PCA's fraudulent transfers to New York State, Plaintiff has been damaged in an amount to be determined at trial, but in no event less than $19,234.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Steven, Baldo & Lighty, PLLC respectfully prays that this Court enter judgment in its favor and against Defendants, Anthony J. Delluniversita, Paul A. Delluniversita, Gail A. Delluniversita, individually and as trustee for the Living Trust for the Benefit of Gail A. Delluniversita, Anthony P. Delluniversita, Kelly Walsh, PCI Coin Grading, Inc. and PCA Collectibles, Inc.:

36

A.      On the First Cause of Action declaring that the conveyance of the real property located at 56 Easton Avenue, North Babylon, New York 11703 dated May 21, 2015 be deemed a fraudulent conveyance and that the property be returned to Anthony J. Delluniversita to be subject to enforcement proceedings by Plaintiff;

B.      On the Second Cause of Action declaring Paul A. Delluniversita is liable to Plaintiff for the 268 fraudulent transfers from PCA Collectibles, Inc.'s checking account at TD Bank totaling $330,634.40 from September 24, 2012 to November 2, 2015 which were payable to Paul A. Delluniversita;

C.      On the Third Cause of Action declaring that Plaintiff is entitled to a judgment declaring that May 21, 2015 transfer of the real property located at 56 Easton Avenue, North Babylon, New York 11703 is void and that the property be placed back in Anthony J. Delluniversita's name to satisfy the Malvino Action judgment;

D.      On the Fourth Cause of Action declaring Paul A. Delluniversita is liable to Plaintiff for the 268 fraudulent transfers from PCA Collectibles, Inc.'s checking account at TD Bank totaling $330,634.40 from September 24, 2012 to November 2, 2015 which were payable to Paul A. Delluniversita was done with actual intent to hinder, delay or defraud creditors;

E.      On the Fifth Cause of Action declaring Gail A. Delluniversita is liable to Plaintiff for the 156 fraudulent transfers from PCA Collectibles, Inc.'s checking account at TD Bank totaling $63,296.47 from September 26, 2012 to August 14, 2015 which were payable to Gail A. Delluniversita;

F.      On the Sixth Cause of Action declaring Gail A. Delluniversita is liable to Plaintiff for the 156 fraudulent transfers from PCA Collectibles, Inc.'s checking account

37

at TD Bank totaling $63,296.47 from September 26, 2012 to August 14, 2015 which were payable to Gail A. Delluniversita;

G.      On the Seventh Cause of Action declaring Anthony J. Delluniversita and Gail A. Delluniversita, be jointly and severally liable to Plaintiff for the 3 items payable to the Internal Revenue Service on behalf of Anthony J. Delluniversita and Gail A. Delluniversita from January 15, 2013 to April 14, 2015 totaling $73,000;

H.      On the Eighth Cause of Action declaring Anthony J. Delluniversita and Gail A. Delluniversita be jointly and severally liable to Plaintiff for the 3 items payable to the Internal Revenue Service on behalf of Anthony J. Delluniversita and Gail A. Delluniversita from January 15, 2013 to April 14, 2015 totaling $73,000 and that the transfers were made with the actual intent to hinder, delay and defraud creditors;

I.      On the Ninth Cause of Action declaring Anthony J. Delluniversita, is liable to Plaintiff for the 197 fraudulent transfers from PCA Collectibles, Inc.'s checking account at TD Bank totaling $401,632.81 from January 3, 2013 to November 3, 2015 which were payable to Anthony J. Delluniversita;

J.      On the Tenth Cause of Action declaring Anthony J. Delluniversita is liable to Plaintiff for the 197 items from PCA Collectibles, Inc.'s checking account at TD Bank totaling $401,632.81 from January 3, 2013 to November 3, 2015 which were made with the actual intent to hinder, delay and defraud creditors;

K.      On the Eleventh Cause of Action declaring Paul A. Delluniversita, is liable to Plaintiff for the 65 fraudulent transfers from PCA Collectibles, Inc.'s checking account at TD Bank totaling $57,486.65 from October 1, 2012 to October 17, 2015 which

were payable to BMW, Lincoln and Mercedes-Benz for vehicles leased for and purchased by Anthony J. Delluniversita and Gail A. Delluniversita;

L.      On the Twelfth Cause of Action declaring Paul A. Delluniversita, is liable to Plaintiff for the 65 fraudulent transfers from PCA Collectibles, Inc.'s checking account at TD Bank totaling $57,486.65 from October 1, 2012 to October 17, 2015 which were payable to BMW, Lincoln and Mercedes-Benz for vehicles leased for and purchased by Anthony J. Delluniversita and Gail A. Delluniversita, that the transfers were made with actual intent to hinder, delay and defraud creditors;

M.      On the Thirteenth Cause of Action declaring Paul A. Delluniversita, is liable to Plaintiff for the 55 fraudulent transfers from PCA Collectibles, Inc.'s checking account at TD Bank totaling $84,898 from February 27, 2013 to February 15, 2016 which were payable to McCathern, Raiser & Kenniff, P.C. and Anthony P. Delluniversita, to defend PCA Collectibles, Inc.'s fraudulent activities;

N.      On the Fourteenth Cause of Action declaring Paul A. Delluniversita, is liable to Plaintiff for the 55 fraudulent transfers from PCA Collectibles, Inc.'s checking account at TD Bank totaling $84,898 from February 27, 2013 to February 15, 2016 which were payable to McCathern, Raiser & Kenniff, P.C. and Anthony P. Delluniversita, that the transfers were made with actual intent to hinder, delay and defraud creditors;

O.      On the Fifthteenth Cause of Action declaring Anthony J. Delluniversita and Gail A. Delluniversita, are liable to Plaintiff for the 113 fraudulent transfers from PCA Collectibles, Inc.'s checking account at TD Bank totaling $80,685 from September 25, 2012 to July 21, 2015 which were payable to Mass Mutual for retirement accounts or

other savings accounts for the benefit of Anthony J. Delluniversita and Gail A. Delluniversita;

P.      On the Sixteenth Cause of Action declaring Anthony J. Delluniversita and Gail A. Delluniversita, are liable to Plaintiff for the 113 fraudulent transfers from PCA Collectibles, Inc.'s checking account at TD Bank totaling $80,685 from September 25, 2012 to July 21, 2015 which were payable to Mass Mutual for retirement accounts or other savings accounts for the benefit of Anthony J. Delluniversita and Gail A. Delluniversita, that the transfers were made with actual intent to hinder, delay and defraud creditors;

Q.      On the Seventeenth Cause of Action declaring Paul A. Delluniversita and Kelly Walsh, are liable to Plaintiff for the 4 fraudulent transfers from PCA Collectibles, Inc.'s checking account at TD Bank totaling $92,440 from October 19, 2012 to April 14, 2015 which were payable to the Internal Revenue Service for tax liabilities of Paul A. Delluniversita and Kelly Walsh;

R.      On the Eighteenth Cause of Action declaring Paul A. Delluniversita and Kelly Walsh, are liable to Plaintiff for the 4 fraudulent transfers from PCA Collectibles, Inc.'s checking account at TD Bank totaling $92,440 from October 19, 2012 to April 14, 2015 which were payable to the Internal Revenue Service for tax liabilities of Paul A. Delluniversita and Kelly Walsh, that the transfers were made with actual intent to hinder, delay and defraud creditors;

S.      On the Nineteenth Cause of Action declaring Anthony J. Delluniverista and Paul A. Delluniversita, are liable to Plaintiff for the 16 fraudulent transfers from PCA Collectibles, Inc.'s checking account at TD Bank totaling $71,706.41 from October 10,

2012 to February 3, 2014 which were payable to Oxford for health insurance for Anthony J. Delluniversita and Paul A. Delluniversita;

T.     On the Twentieth Cause of Action declaring Anthony J. Delluniversita and Paul A. Delluniversita, are liable to Plaintiff for the 16 fraudulent transfers from PCA Collectibles, Inc.'s checking account at TD Bank totaling $71,706.41 from October 10, 2012 to February 3, 2014 which were payable to Oxford for health insurance for Anthony J. Delluniversita and Paul A. Delluniversita, that the transfers were made with actual intent to hinder, delay and defraud creditors;

U.     On the Twenty-First Cause of Action declaring Anthony J. Delluniverista and Gail A. Delluniversita, are liable to Plaintiff for the 4 fraudulent transfers from PCA Collectibles, Inc.'s checking account at TD Bank totaling $37,363 from October 12, 2012 to April 14, 2015 which were payable to New York State for tax obligations of Anthony J. Delluniversita and Gail A. Delluniversita;

V.     On the Twenty-Second Cause of Action declaring Anthony J. Delluniversita and Gail A. Delluniversita, are liable to Plaintiff for the 4 fraudulent transfers from PCA Collectibles, Inc.'s checking account at TD Bank totaling $37,363 from October 12, 2012 to April 14, 2015 which were payable to New York State for tax obligations of Anthony J. Delluniversita and Gail A. Delluniversita, that the transfers were made with actual intent to hinder, delay and defraud creditors;

W.     On the Twenty-Third Cause of Action declaring Paul A. Delluniversita and Kelly Walsh, are liable to Plaintiff for the 5 fraudulent transfers from PCA Collectibles, Inc.'s checking account at TD Bank totaling $18,234 from October 12, 2012

41

to April 14, 2015 which were payable to New York State for tax obligations of Paull A. Delluniversita and Kelly Walsh;

    Y.    On the Twenty-Fourth Cause of Action declaring Paul A. Delluniversita and Kelly Walsh, are liable to Plaintiff for the 5 fraudulent transfers from PCA Collectibles, Inc.'s checking account at TD Bank totaling $18,234 from October 12, 2012 to April 14, 2015 which were payable to New York State for tax obligations of Paul A. Delluniversita and Kelly Walsh, that the transfers were made with actual intent to hinder, delay and defraud creditors;

    Z.    Award Plaintiff their reasonable attorney's fees and costs;

    AA.    Award Plaintiff prejudgment and post-judgment interest; and

    BB.    Award Plaintiff such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: March 22, 2019

    Respectfully submitted,

    Kenneth G. Walsh (KW-1654)
    Law Offices of Kenneth G. Walsh
    100 S. Bedford Road, 3rd Fl.
    Mt. Kisco, New York 10549
    (929) 241-7307
    kwalsh@kgwalshlegal.com