**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| STEVENS BALDO & LIGHTY, PLLC, | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 2:18-CV-1600-JMA-AKT |
| | : | |
| v. | : | **THIRD AMENDED COMPLAINT** |
| | : | |
| ANTHONY J. DELLUNIVERSITA, | : | **Jury Trial Demanded** |
| PAUL A. DELLUNIVERSITA, | : | |
| KELLY WALSH, ANTHONY P. | : | |
| DELLUNIVERSITA, GAIL A. | : | |
| DELLUNIVERSITA, INDIVIDUALLY AND AS | : | |
| THE TRUSTEE OF THE GAIL A. | : | |
| DELLUNIVERSITA LIVING TRUST, | : | |
| PCI COIN GRADING, INC., | : | |
| PCA COLLECTIBLES, INC., and | : | |
| C & S CONSULTING AGENCY INC., | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

Plaintiff, Stevens Baldo & Lighty, PLLC ("Stevens Baldo" or "Plaintiff"), on behalf of

itself and derivatively, as the assignee of a judgment creditor, on behalf of PCA Collectibles, Inc.

("PCA") by and through their attorney, Kenneth G. Walsh, as and for their Third Amended

Complaint against Defendants, Anthony J. Delluniversita ("AJ"), Paul A. Delluniversita

("Paul"), Kelly Walsh ("Walsh"), Anthony P. Delluniversita ("Attorney Delluniversita"), Gail A.

Delluniversita, individually and as the Trustee of the Gail A. Delluniversita Living Trust,

(collectively "Gail"), PCI Coin Grading, Inc. ("PCI"), PCA and C & S Consulting Agency Inc.

("C & S") hereby alleges as follows:

<u>**SUMMARY OF THE ACTION**</u>

1.      This is an action to recover the proceeds from a series of fraudulent conveyances

designed to frustrate collection of an unpaid, registered judgment originally entered in the matter

entitled *Albert P. Malvino, Representative of the Estate of Bonnie Pereida, Deceased v. Paul A.*

1

*Delluniversita, et al.*, No.2:12-cv-401 (S.D.TX.) ("Malvino") in the amount of $1,337,201.08.[1]

While the Malvino Action was pending and thereafter, Paul and other members of the

Delluniversita family systematically stripped PCA of its assets through a series of fraudulent

transfers to make PCA and AJ judgment proof, while continuing the fraudulent business under

another guise with another family member now supposedly responsible for the family business.

2.      This action asserts two types of fraudulent conveyance claims against defendants:

(i) constructive fraudulent transfer claims under New York Debtor & Creditor Law ("NYDCL")

§§ 273, 273-a, 274, 275, 278 & 279 and Business Corporation Law ("BCL") §§ 719 & 720 and

(ii) actual fraud claims under NYDCL §§ 276 and 276-a.

3.      During the pendency of the Malvino Action, Paul, as the CEO of PCA transferred

over $1.3M to family members AJ, Gail and himself among others, at a time when PCA was

insolvent, or rendered insolvent, as a result of these transfers, leaving PCA with an unreasonably

small capital.  PCA made these transfers intending to or believing that it would incur debts

beyond its ability to pay the debts when they matured.  Paul, as the CEO, president and signatory

on PCA's bank account sanctioned the aforementioned transfers.

4.      In making the aforementioned transfers, PCA left itself unable to pay its various

debts, most notably, its debt to Malvino as a result of its fraud.  As such, each of the

aforementioned transfers constituted fraudulent conveyances under New York law. This is an

action to recover and/or to avoid the proceeds of the aforementioned fraudulent conveyances.

5.      Essentially, AJ and Paul ran a fraudulent coin investment scheme through PCA.

They purchased lists of customers, mostly elderly people. Used telemarketers to call the names

---

[1] The Malvino judgment has now been domesticated in the Supreme Court of the State of New York, Suffolk
County. *Albert P. Malvino, Representative of the Estate of Bonnie Pereida, Deceased v. Paul A. Delluniversita, et
al.*, Index No. 601594/2018 (Sup. Suffolk Co.) ("State Court Proceeding").  The judgment has been assigned to
Plaintiff by Albert P. Malvino.

on the lists and sold them coins that PCA did not have.  When a customer made a purchase via credit card or PayPal, PCA went out and purchased sub-par coins. AJ created phony documentation to inflate their value by having PCI mis-grade the coin to give it a higher value and PCA then sent the coin(s) to the customer under harsh terms of sale.  Profits were withdrawn on a weekly basis to make sure that any of the inevitable judgments the company would face could not be paid - because they stripped the company of assets. When they were done with a company, they simply created another to continue the fraud. Their operation was designed to fail if a victim asserted a claim against them.

6.      First, AJ and Paul swept the profits out of PCA on a weekly basis and systematically dispersed over one million three hundred thousands of dollars of PCA funds to Delluniversita family members.  PCA purchased and leased cars for the family, including BMWs, Lincolns and Mercedes-Benz automobiles.  PCA funds paid family members' personal expenses including, but not limited to tax obligations, insurance and meals.   Paul established "retirement" accounts at Mass Mutual for the benefit of AJ and Gail.  These retirement accounts were solely funded with PCA funds while the Malvino Action was pending.

7.      Second, in the face of the Malvino lawsuit and the obvious others to follow, Paul created C & S on June 26, 2014, to continue the coin scheme.  Paul even issued PCA checks to C & S in its waning days to initially fund this new entity.

8.      Third, *the day after* the inevitable adverse decision was entered in the Malvino Action, AJ, Gail and Attorney Delluniversita executed a deed which transferred *the only real property* AJ had in New York to a Living Trust for the Benefit of Gail, an obvious attempt to put it beyond the reach of creditors.  Both Gail and Attorney Delluniversita participated in this fraudulent transfer.

3

9.     These intrafamily transfers were designed to and did draw down PCA's capital and render the company insolvent, so that it could not pay its bills and, more specially, the Malvino judgment. These transfers lacked fair consideration, were devoid of good faith by the transferor(s) and/or the transferee(s), occurred while the Malvino Action was pending or shortly before the case was commenced.  As a result of these action, PCA, PCI and AJ have failed to satisfy the Malvino judgment, among other debts. In addition, Paul, as the signatory on PCA's checking account at TD Bank, intentionally dispersed and distributed PCA funds which should have been retained to pay creditors, including the impending judgment creditors in the Malvino Action. Paul even created a successor company, C & S using PCA funds. These transfers were designed with the assistance of counsel to remove AJ's name from the deed of his home and strip PCA of its assets with the actual intent to defraud creditors like the Estate of Bonnie Pereida before a judgment could be docketed against them. As such, each of the aforementioned transfers constituted fraudulent conveyances under New York law. This is an action to recover and/or to avoid the proceeds of the aforementioned fraudulent conveyances.

## THE PARTIES

10.     Plaintiff Stevens Baldo & Lighty, PLLC is a professional limited liability company created under the laws of Texas with its principal place of business at 550 Fannin Street, Suite 700, Beaumont, Texas.  Stevens Baldo & Lighty, PLLC is the assignee of the Judgment obtained by Ms. Pereida's estate against Defendants.

11.     Defendant Anthony J. Delluniversita, resides at 56 Easton Avenue, North Babylon, New York 11703.  Upon information and belief, AJ is still in the numismatic business with C & S.

12.     Defendant Paul A. Delluniversita, resides at 18 Gate Lane, West Islip, New York 11795. Upon information and belief, Paul is still in the numismatic business with C & S.

13.     Defendant Anthony P. Delluniversita is an attorney licensed in the State of New York.  He currently maintains an office at 2 W Main Street SE3, Bay Shore, New York 11706.

14.     Defendant Kelly Walsh, resides at 18 Gate Lane, West Islip, New York 11795. She is married to Paul.

15.     Defendant Gail A. Delluniversita, resides at 56 Easton Avenue, North Babylon, New York 11703 and is the wife of AJ and the mother of Attorney Delluniversita and Paul. She is also the trustee of the Living Trust for the Benefit of Gail A. Delluniversita.

16.     Defendant PCI Coin Grading, Inc., is a corporation formed under the laws of the State of Florida with its principal place of business at 1730 South Federal Highway, Delray Beach, Florida 33483. Its current mailing address is Dennis Daidone, 3280 Sunrise Highway, Suite 165, Wantagh, New York 11793.

17.     Defendant PCA Collectibles, Inc., is a New York corporation which previously maintained its principal place of business at 1045 Route 109, STE 100, Lindenhurst, New York, 11757. According to New York State Department of State, Division of Corporation's website, Paul is listed as PCA's CEO.

18.     Defendant C & S Consulting Agency Inc., is a New York corporation with its principal place of business at 654 N. Wellwood Avenue, Suite D217, Lindenhurst, New York 11757.

## THE JUDGMENT DEBTORS

19.     As detailed below, after trial on the merits in the Malvino Action, PCA and PCI were found liable to Ms. Pereida for the principal sum of $1,337,201.08 together with interest from December 12, 2007.  AJ was found to be personally liable for the damages.

20.     The judgment debtor PCA, is a New York corporation with its former principal place of business at 1045 Route 109, Suite 100, Lindenhurst, New York 11757.  PCA was formed by Paul A. Delluniversita as the chief executive officer and registered agent.

21.     The judgment debtor PCI, is a Florida corporation with its former principal place of business in Delray Beach, Florida.

22.     The judgment debtor AJ, resides at 56 Easton Avenue, North Babylon, New York, a property he fraudulently transferred to a Living Trust for the Benefit of Gail A. Delluniversita, his wife.  AJ still enjoys the use of said property and retains control of the property, even though his name does not appear on the title.

## JURISDICTION AND VENUE

23.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) as Plaintiff and AJ, Paul, Attorney Delluniversita, Walsh, Gail, PCI, PCA and C & S are citizens/corporations of different states and the amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorneys' fees.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in New York, and AJ, Paul, Attorney Delluniversita, Walsh, Gail, PCI, PCA and C & S are subject to personal jurisdiction in this Court with respect to the claims alleged herein.

## BACKGROUND

25.     Ms. Pereida, was a Corpus Christi, Texas resident, who had been a stockbroker for 51 years and was the first vice president of the Corpus Christi branch of Merrill Lynch.

26.     After the market crash of 2008, Ms. Pereida decided to invest in rare coins as a way to protect her assets against inflation.  In 2010, Ms. Pereida began purchasing coins. At this time, Ms. Pereida was approximately 76 years old and in declining health as a result of a stroke.

27.     Upon information and belief, AJ and PCA purchased leads that they used to target their elderly customers. C & S has continued to purchase leads for its operations.

28.     Beginning in January 2011, Ms. Pereida received unsolicited telephone calls from PCA telemarketers.  After making her first purchase from PCA on January 20, 2011, PCA called her on a weekly and sometimes a daily basis representing that she "needed the coins to round out and collect her collection(s)" and that she was "getting a good deal."  PCA's sales representatives convinced Ms. Pereida to purchase as many coins as possible.[2]

29.     From January through May 2011, Ms. Pereida made 31 separate purchases of coins from PCA.  Ms. Pereida purchased a total of 135 coins from PCA for a total of $727,560.00.

### Representations Made for Each Transaction

30.     When Ms. Perieda's estate presented its case at trial against [] the evidence showed that after each purchase, PCA sent Ms. Perieda an invoice through the United States Postal Service which listed the coins purchased.  Each invoice provided the sale price and the description and grade of each coin as determined by "independent third-party" grader PCI.

---

[2] Many of the facts asserted herein are taken directly from Judge Ramos' Findings of Fact and Conclusions of Law in the Malvino Action.

31.     Each invoice stated that "[a]ny item not found to be satisfactory[] must be returned by the 15th day of receipt. After that all sales are final. All items are guaranteed to be authentic."

***How Judgment Debtors Perpetrated the Scheme to Systematically Over-Graded Coins***

32.     On January 20, 2011, when Pereida made her first purchase from PCA, they sent her a numismatic guide book, commonly known as the "Red Book."  The Red Book sets forth the estimated value of coins based on their grade level.

33.     Malvino and Pereida used the Red Book to assess the value of the PCA coins based on the grades established by the purported independent grader as indicated on PCA's invoices.

34.     With every purchase, PCA's invoice represented the purchase price and description and grade of each coin as determined by "independent third party" grader.  It did not disclose the grader was PCI, a company owned by the majority shareholder of PCA—AJ.

35.     Each invoice also stated that "[a]ny item found not to be satisfactory[] must be returned by the 15th day of receipt. After that all sales are final.  All items are guaranteed to be authentic."

36.     These representations lulled Malvino and Pereida into a false sense of security. Because when they compared the representations on the invoice to the values listed in the Red Book, they believed that they were getting very good prices on the coins sold by PCA.

37.     But just like the victims in the Madoff scandal, the representations on the invoices were made up.  The coins were graded by PCI, owned and controlled by AJ.  The grades assigned to the coins were made up to grossly inflate their value—much like Bernie Madoff's account statements.  After assigning each coin a grade, AJ priced it on PCA's invoice according

8

to the value in the *Coin Dealer Newsletter*, more commonly known as the "Grey Sheet."  This would show that a coin sold to Perieda would be more valuable when she referenced it in the Red Book, which PCA provided to her.  PCA never disclosed to Perieda that the grader was not independent, that the coins were not authentic, in fact one coin was counterfeit and all were mis-graded to inflate their value.

38.     After Ms. Pereida died in October of 2011, Malvino was appointed executor of her estate.

***Discovery of the Fraud***

39.     Malvino, after becoming executor of Ms. Pereida's estate, retained a number of prominent appraisers to review Pereida's coins from PCA.  They included, Heritage Auction Appraisal Services, Inc. ("Heritage"), one of the nation's leading and largest coin valuation and auctioning companies.

40.     According to Heritage, the fair market value of the coins as of October 29, 2011, was $190,865.00---26.2% of the amount paid by Ms. Pereida.  Heritage reviewed PCI's "grading" on the coins and concluded that PCI over graded the coins it sold Ms. Pereida, sold her at least one counterfeit coin, and improperly assigned obviously improper  "grades" to coins – even to coins that did not qualify for "grading" because they were damaged or "cleaned".

41.     After obtaining this appraisal, Malvino retained another expert, Paul Montgomery ("Montgomery") to assess the grade and value of each coin.

42.     Montgomery's findings were generally consistent with those of the Heritage. Montgomery concluded that the reasonable retail value of the coins was $150,964.00 at the time Pereida purchase them from PCA -- 20.8% of the amount PCA charged Ms. Pereida.

43.     Montgomery also found a consistent pattern of over grading. He graded each coin lower than PCI did, with some being graded 19 to 23 levels lower.

44.     Montgomery requested another appraisal to verify his conclusions. Professional Coin Grading Service ("PCGS") conducted the appraisal.

45.     PCGS's findings were consistent with those of Montgomery. It also assessed every coin at lower grade level that PCI did, and it agreed with Montgomery that 26 of the 135 coins were ungradeable because of their condition or lack of authenticity.

***Lawsuit Commenced Against PCA, PCI, Paul & AJ***

46.     On or about December 21, 2012, Malvino commenced an action in the United States District Court for the District of Texas, Corpus Christi Division alleging *inter alia* mail and wire fraud under § 1962(c) and conspiracy under § 1962(d) under the Racketeer Influenced and Corrupt Organization Act ("RICO"), violation of the Texas Deceptive Trade Practices Act ("DTPA"); common law fraud, negligent misrepresentation and common law civil conspiracy arising out of Pereida's purchase of coins from Paul, AJ, PCA and PCI.

***Admission of a Fraudulent Conveyance***

47.     During the course of discovery in the Malvino Action, Paul admitted at his deposition on April 11, 2014 that he works at PCA, and that he and his father swept out the profits of PCA on a weekly basis.

48.     On April 11, 2014, AJ too was deposed in the Malvino Action.  AJ testified that he and Paul distributed the profits of PCA on a weekly basis at a 60/40 split to him and Paul, respectively, per a verbal agreement they had.

49.     Attorney Delluniversita represented Paul and AJ in their Malvino depositions and subsequently at trial.

50.     During the four years that the Malvino Action was pending (2012-2016), AJ and Paul were defendants in the Malvino Action, an action for monetary damages, AJ and Paul directed that PCA fraudulently transfer and distribute the "profits" to themselves on the basis of a 60/40 percent split on a weekly basis.  This stripped PCA of its assets making it effectively unable to meet the bills that were coming when people demanded refunds for the fraudulent coin sales or when judgments were imminent.

*Defrauded Others Using the Same Mis-grading Scheme*

51.     During discovery in the Malvino Action, defendants produced other complaints that demonstrated that they had similarly defrauded other customers out of several hundreds of thousands of dollars.

52.      For example, documents produced indicated that they defrauded Kenneth Campbell of Arizona who was taken for approximately $38,000 in August 2012, using a similar mis-grading scheme.  According to a complaint filed with the Arizona Attorney General's Office, AJ met Mr. Campbell in a parking lot at the Phoenix Airport to sell him coins.  Mr. Campbell reviewed the coins, accepted the coins and received a PCA invoice identifying the coins, all of which PCI graded 63 or higher. Mr. Campbell gave AJ a cashier's check for $45,000. AJ returned to New York.

53.     On information and belief, when Mr. Campbell took the coins to a dealer in Phoenix, the appraiser informed him the coins were worth $8,000, not the $45,000 he had paid.

54.     Upon information and belief, AJ, PCA and Paul never returned any of Mr. Campbell's telephone calls or correspondence concerning the mis-grading and inflated values of the coins he was sold.

55.     Similarly, on information and belief, PCA sold Mr. James D. Arthur coins it represented were worth $700,000 over a two plus year period -- from 2010 to 2012.  On information and belief, Mr. Arthur's complaint to the South Dakota's Attorney General's Office alleged that PCA systematically over graded coins sold to Mr. McArthur, as well as selling counterfeit coins.  An appraisal showed that these coins were worth perhaps $70,000 to $105,000, rather than the $700,000 PCA valued and sold the coins for.

56.     Based upon the complaints from Messrs. Arthur and Campbell to various attorney general offices around the country; Paul, as the CEO and President of PCA, should have been on notice that his company's sales practices were deceptive or fraudulent.  He did nothing, because he knew what was happening.

57.     On or about June 26, 2014, Paul created C & S to continue the fraudulent coin scheme.

58.     Shortly thereafter, Paul issued checks drawn on PCA's account payable to C & S to initially fund C & S's operations.  C & S simply continued selling coins, just like PCA, but under a new corporate name, with the same key employees, using the same sales practices—cold calling potential customers from lists of leads they purchased.

59.     On November 17, 2014, a bench trial was held before United States District Court Judge, Neva Gonzales Ramos in the Southern District of Texas, Corpus Christi Division.

60.     PCA, PCI, AJ and Paul defended their practices by asserting that the numismatic industry is subjective, and that no two graders will assign the same grade to a coin.  But the court rejected this defense, noting in its Findings of Fact and Conclusions of Law dated May 20, 2015 that: "Anthony [J.] had no formal training as a coin grader, had not attended a coin grading program, and did not rely on consensus grading."  *Id*. at ¶ 43. Further, the court found that "[t]he

12

assessments by PCGS [Professional Coin Grading Service] and Montgomery [of the Pereida coins sold by PCA] were within two grade levels of each other for a majority of the coins and nearly 90% of the assessments were within three grades levels of each other." *Id.* at ¶ 41. These served as indicia of fraud.

***Conveyance of Real Property***

61.     On May 20, 2015, Judge Ramos found in favor of Malvino on almost each count.[3] The court awarded damages of $536,934.00 for economic damages for the common law fraud and negligent misrepresentation claims.  The court awarded examplary damages of $536,934.00 against PCA and PCI each, assessed both $268,467.00 as their share of the exemplary damages on the common law fraud claim.  The court awarded Pereida $1,610,802.00 on the RICO claim and awarded reasonable attorney's fees of $280,190.00 against AJ and PCA.[4]  Judge Ramos also found AJ personally liable under a piercing the corporate veil theory.  Paul, as a minority owner was not found liable under a piercing the corporate veil theory.

62.     The very next day, on May 21, 2015, Attorney Delluniversita, AJ and Gail transferred their property which was owned by all three at 56 Easton Avenue, North Babylon, New York 11703 ("North Babylon Property") to a Living Trust for the Benefit of Gail Delluniversita to protect the property before a judgment could be entered.

63.     On December 12, 2016, Malvino filed his election of remedies and a final judgment was docketed against PCA, PCI and Big Anthony in the sum of $1,073,868.00 without interest.

---

[3] The Texas Deceptive Trade Practice claim did not survive the death of Ms. Pereida and the claim was dismissed.
[4] An appeal was taken by defendants and the Fifth Circuit ultimately vacated the ruling on the RICO claim, but left the remainder of Judge Ramos' decision intact.

64.     On January 23, 2018, foreign judgment obtained in the Malvino Action was docketed in the Supreme Court for the State of New York, Suffolk County with a current outstanding balance of $1,337,201.08.  To date, defendants have failed to pay this judgment and the $1,337,201.08 remains due and owing.

65.     Thereafter, Plaintiff sought enforce the judgment in the State Court Proceeding by, *inter alia,* duly serving AJ, Gail and Attorney Delluniversita with the following: (i) restraining notices; (ii) subpoena *duces tecum ad testifcandum* on AJ and Gail and (iii) information subpoena on Attorney Delluniversita (collectively, the "Enforcement Devices").

66.     AJ, Gail and Attorney Delluniversita failed to respond to any of the Enforcement Devices in the State Court Proceeding.

67.     On April 11, 2018, an Order to Show Cause was entered in the State Court Proceeding to hold AJ, Gail and Attorney Delluniversita in contempt.

68.     The Order to Show Cause was returnable on May 10, 2018 and there was no appearance by any of the Delluniversitas or counsel on their behalf.

69.     On March 15, 2019, an order was entered against AJ, Gail and Attorney Delluniversita requiring them to comply with the previously served Enforcement Devices or be held in contempt by the Supreme Court of Suffolk County.

70.     AJ and Gail continued to float the authority of the courts and the judicial process. Although AJ and Gail have been served with restraining notices under CPLR §5222, they are actively attempting to dissipate assets. Gail has been filtering checks payable to AJ through her account even though she has been served with a restraining notice to prohibit this.  She continues to launder AJ's monies through her account.

71.     On or about January 24, 2019, AJ and Gail listed their apartment located at 806 E. Windward Way, Apt. 203, Lantana, Florida 33462 ("Lantana Property") for sale with Lang Realty.

72.     On March 15, 2019, AJ and Gail were found in civil contempt for their failure to comply with the court's order directing them to comply with the Enforcement Devices.

73.     Defendants have refused to answer and have delayed this proceeding, on information and belief, in the hopes of dissipating the Lantana Property before they would be compelled to disclose their assets. Defendants inactivity in the proceeding at bar and the State Court Proceeding, coupled with their attempts to sell the Lantana Property were designed with the actual intent to hinder, delay and defraud creditors.

74.     By refusing to comply with the Enforcement Devices, AJ, Gail and possibly Attorney Delluniversita are continuing their efforts to frustrate the enforcement of the Malvino Action judgment.

***Plaintiff Obtains Information on PCA's Checking Account***

75.     Plaintiff served a subpoena on PCA's former counsel in New York that represented them in the Malvino Action and received a response.  Plaintiff was able to locate PCA's checking account at TD Bank.

76.     On April 9, 2018, Plaintiff served a subpoena on TD Bank.  TD Bank responded and provided a treasure trove of information:  over 5,200 checks issued from PCA's accounts with Paul's signature on each item over a four year period (2012-2016) while the Malvino Action was pending.  These checks illustrate how AJ and Paul divided up the proceeds of their fraudulent coin scheme from PCA's accounts to themselves, their creditors and their family members, leaving PCA undercapitalized.  AJ and Paul, as the only shareholders of PCA did this

15

with the intent or belief that PCA was about to incur debts beyond its ability to them as they matured—the Malvino Action judgment.

77.     While reviewing the 5,200 items drawn on PCA's account from 2012-2016, Plaintiff identified 113 checks Paul issued from PCA's TD Bank Account No. XXXXXXX228 payable to Mass Mutual.

78.     Plaintiff then served a subpoena upon Mass Mutual for Accounts Nos. OSLXXXXXX85 and OSLXXXXXX67.  Mass Mutual responded with several hundred pages worth of account opening documents and accounts statements on accounts owned by the Delluniversitas.  It appears that Paul purchased a Mass Mutual Odyssey Select Fixed Annuity Account OSLXXXXXX85 with PCA funds for the benefit of AJ on or about September 26, 2012, within 90 days of the Malvino Action being commenced.

79.     Based on the responses received from Mass Mutual, Paul also purchased a Mass Mutual Odyssey Select Fixed Annuity Account OSLXXXXXX67 using PCA funds for the benefit of Gail on or about November 15, 2012.  Plaintiff has complied a schedule of 113 checks drawn on PCA's TD Bank account from September 25, 2012 to July 21, 2015 and credited to Mass Mutual Odyssey Select Fixed Annuity Account OSLXXXXXX67 for Gail's benefit. Annexed hereto as Exhibit A is a schedule of 113 PCA checks payable to Mass Mutual for Accounts Nos. OSLXXXXXX85 and OSLXXXXXX67 from September 25, 2012 to July 21, 2015 for retirement accounts for the benefit of AJ and Gail and incorporated herein by reference.

80.     Now with the benefit of PCA's banking records, Plaintiff has a roadmap of how Paul, as the CEO, President and signatory on the PCA accounts at TD Bank distributed and disbursed over $1.3 million of PCA funds to AJ, Paul, Gail, Attorney Delluniversita, Mass Mutual, taxing authorities, Oxford insurance company ("Oxford"), BMW, Lincoln and

16

Mercedes-Benz and other creditors, while the Malvino Action was pending in an attempt to strip PCA of any assets before judgment could be entered and docketed.

81.     In fact, once Judge Ramos issued her Findings of Fact and Conclusions of Law on May 20, 2015, PCA's banking activities at TD Bank came to an end within months because Paul distributed all of PCA's assets before the Malvino judgment could be entered. Paul made these transfers at a time when PCA was insolvent or rendered insolvent by virtue of the transfers alleged herein.  Paul made these transfers knowing of the liability to Malvino for the fraudulent sales to Ms. Pereida. As a result of these transfers, PCA would be unable to pay Malvino and ultimately unable to satisfy the judgment entered in Malvino's favor.

82.     Upon information and belief, AJ and Paul are still engaged in the numismatic industry using C & S to continue their fraudulent coin scheme.

83.     C & S is the successor in interest to PCA.  PCA funds were used to establish its accounts and operations.  Paul, AJ, Gail and Ruben (the PCA salesman who sold the fraudulent coins to Mr. Arthur from South Dakota) each worked for PCA and then C & S.  AJ purchased the coins for both companies; Gail did filing and cleaning for both PCA and C & S. She and AJ went to and continue to go to coin shows to purchase coins for PCA and now for C & S. The same business practices are used by both companies: buying leads to customers, cold-calling them with commissioned salesmen, selling coins and then buying coins to fulfil the orders.

84.     In the Malvino Action, the court found that PCI improperly graded coins that had been cleaned.[5]  Upon information and belief, C & S has been cleaning coins and/or selling cleaned coins to customers.  Upon further information and belief, it appears that C & S is continuing to engage in deceptive practices to defraud its customers.

---

[5] Meaning coins treated to enhance their appearance and desirability.  Cleaning is not considered an acceptable technique to enhance the grade of a coin.

85. Upon information and belief, PCA is past due on its bi-annual filings with the New York Secretary of State and has not filed a tax return with New York State tax returns since 2015. It is believed that PCA has been inactive.

86. According to AJ's testimony at his April 11, 2014 deposition, PCI was sold by AJ prior to his deposition.

87. Upon information and belief, AJ does not maintain bank accounts in the name. He was taken off the joint account he maintained with Gail in May 2016, due to a purported gambling problem.

88. Upon information and belief, AJ and Gail have been funding whole life insurance policies at Mass Mutual in AJ's name to defraud Malvino, because one of the policies was purchased just prior to the commencement of the Malvino Action.

89. This coupled with the voidable May 21, 2016 transfer of the North Babylon Property and the systematic dispersion of PCA assets while the Malvino Action was pending were designed to hinder, delay and defraud his creditors and frustrate collection of judgments.

90. In addition, Gail testified that she filters all the proceeds from AJ's current coin sales through accounts she controls. Gail pays for all the living expenses of the family, including AJ's, from her accounts.

91. The May 21, 2015 fraudulent transfer of the North Babylon Property is disturbing because Attorney Delluniversita, an officer of the court participated in this transaction. This transfer was done for no other purpose, but to hinder, delay and defraud creditors and frustrate collection of the judgement that was to be entered in the Malvino Action.

92. In addition to the foregoing, there are several badges of fraud present here which gives rise to an inference of the defendants' intent to hinder, delay, or defraud plaintiff, including

18

transfer of real property among family members for no consideration, establishing and funding

investment accounts with PCA funds for the benefit of AJ and Gail which were for inadequate or

no consideration, were made after the Malvino Action was commenced and just after Judge

Ramos' Findings of Fact and Conclusions of Law resulting in a significant judgment against AJ,

PCA and PCI.

93.     The transfers at issue in this matter are all constructively fraudulent because the

conveyances were made without fair consideration, while the Malvino Action was pending,

which was an action for money damages and the Malvino judgment has never been satisfied.

94.     Moreover, the transferor(s) all had knowledge of the underlying fraud.  AJ had

knowledge of the fraudulent scheme to mis-grade coins sold to PCA's customers.  Paul had

knowledge of the impending enforceable judgment against PCA or at minimum that the action

was pending.  AJ and Attorney Delluniversita had knowledge of the imminent enforceable

judgment against PCA and AJ on May 21, 2015, when they transferred their interest in the North

Babylon Property.

95.     The transfers at issue in this matter are all actually fraudulent.  The

property/checks transferred by PCA, AJ and Paul had value out of which the Malvino Action

judgment could have realized a portion of its claim.  PCA and AJ as judgment debtors

transferred their property with the actual intent to defraud creditors like Malvino and Plaintiff

herein.

***Fraudulent Transfer of the North Babylon Property***

96.     On or about May 21, 2015, judgment debtor, AJ and his wife, Gail and Attorney

Delluniversita fraudulently transferred the North Babylon Property to a Trust for the Benefit of

Gail A. Delluniversita without fair or reasonable consideration.  This was done a day after the

United States District Court for the District of Texas issued its Findings of Fact and Conclusions of Law in the Malvino Action.

***Unlawful Transfers to Mass Mutual***

97.     Paul as the CEO, President and signatory on PCA's TD Bank accounts issued 113 checks totaling $80,685 to Mass Mutual to purchase Mass Mutual Odyssey Select Fixed Annuity Account OSLXXXXXX85 for AJ and Mass Mutual Odyssey Select Fixed Annuity Account OSLXXXXXX67 for Gail using PCA funds. The 113 items were issued during the period of September 25, 2012 to July 21, 2015. See Exhibit A for a detailed schedule of the payments to Mass Mutual and incorporated herein by reference.[6] These items were issued by PCA without fair consideration.

***Fraudulent Transfer of Profits from PCA to AJ & Paul***

98.     Based upon sworn admissions given during his deposition on April 11, 2015, Paul testified that he took 40% of the profits out of PCA on a weekly basis without fair consideration.

99.     Based upon Paul's sworn testimony in the Malvino Action he was fraudulently withdrawing his 40% interest in the profits of PCA while named as a defendant with Big Anthony, PCA and PCI in the Malvino Action.

100.     Paul issued himself 268 checks totaling $330,634.40 while the Malvino Action was pending and 90 days prior to its commencement. A schedule of such checks is annexed hereto as Exhibit B and incorporated herein by reference. Paul systematically disbursed PCA's funds as quickly as they came in because he was aware of the fraudulent nature of PCA's business and the impending enforceable judgment in the Malvino Action.

---

[6] There are approximately 1,000 transfers alleged to be fraudulent at issue in this matter.  Each transfer is listed in detail in the attached schedules incorporated herein by reference.

101.    Paul as the CEO, President and signatory on PCA's TD Bank accounts issued 197 checks to AJ from January 3, 2013 to November 3, 2015 totaling $401,632.81.  Annexed hereto as Exhibit C is a schedule of said payments to AJ and incorporated herein by reference. These items were issued by PCA without fair consideration.

**Unlawful Payments of Personal Income Tax Liabilities with PCA Funds**

102.    Paul as the CEO, President and signatory on PCA's TD Bank accounts issued three (3) checks to the Internal Revenue Service on behalf of Anthony J. Delluniversita and Gail A. Delluniversita from January 15, 2013 to April 14, 2015 totaling $73,000. Annexed hereto as Exhibit D is a schedule of said payments to the Internal Revenue Service and incorporated herein by reference. These items were issued by PCA without fair consideration.

103.    Paul as the CEO, President and signatory on PCA's TD Bank accounts issued four (4) checks totaling $92,440 to the Internal Revenue Service for payment of tax liabilities on behalf of Paul A. Delluniversita and Kelly Walsh from October 19, 2012 to April 14, 2015 using PCA funds. Annexed hereto as Exhibit E is a schedule of said payments from PCA's account to the Internal Revenue Service for the tax obligations of Paul A. Delluniversita and Kelly Walsh and incorporated herein by reference. These items were issued by PCA without fair consideration.

104.    Paul as the CEO, President and signatory on PCA's TD Bank accounts issued four (4) checks totaling $37,363 to New York State for income tax liabilities due and owing from AJ and Gail.  Annexed hereto as Exhibit F is a schedule of PCA's checks payable to New York State for the tax obligations of AJ and Gail and incorporated herein by reference. Said tax payments were made from October 12, 2012 to April 14, 2015 using PCA funds. These items were issued by PCA without fair consideration.

105.     Paul as the CEO, President and signatory on PCA's TD Bank accounts issued Five (5) checks totaling $19,234 to New York State for income tax liabilities due and owing from Paul and Kelly Walsh.  Annexed hereto as Exhibit G is a schedule of PCA's checks to New York State for the tax obligations of Paul and Walsh and incorporated herein by reference. Said tax payments were made from October 12, 2012 to April 14, 2015 using PCA funds. These items were issued by PCA without fair consideration.

**Fraudulent Transfers to Gail**

106.     Paul as the CEO, President and signatory on PCA's TD Bank accounts issued Gail 156 checks totaling $63,296.47 from September 26, 2012 to August 14, 2015 purportedly for wages without fair.  Annexed hereto as Exhibit H is a schedule of said payments to Gail and incorporated herein by reference.

**PCA Unlawfully Purchases and Leases Cars for AJ, Gail & Paul**

107.     Paul as the CEO, President and signatory on PCA's TD Bank accounts issued 65 checks to BMW, Lincoln and Mercedes-Benz from October 1, 2012 to October 17, 2015 totaling $57,486.65. Annexed hereto as Exhibit I is a schedule of payments made to BMW, Lincoln and Mercedes-Benz and incorporated herein by reference.  These items were issued by PCA without fair consideration.

**PCA Unlawfully Transfers of Funds to Counsel**

108.     Paul as the CEO, Pres. and signatory on PCAs TD Bank accounts issued 55 checks to various lawyers and law firms to defend and delay creditors so that they could continue their fraudulent coin activities, they included McCathern PLLC; Raiser & Kenniff, P.C. and Anthony P. Delluniversita from February 27, 2013 February 15, 2016 totaling $84,898.

Annexed hereto as Exhibit J is a schedule of PCA's payments to various attorneys and law firms and incorporated herein by reference these items were issued by PCA without fair consideration.

***PCA Unlawfully Transfers Monies to Oxford***

109.    Paul as the CEO, Pres. and signatory on PCA's TD Bank accounts issued 16 checks totaling $71,706.41 to Oxford for health insurance premiums from October 10, 2014 to February 3, 2014 using PCA funds. Annexed hereto as Exhibit K is a schedule of PCA checks payable to Oxford for health insurance for AJ, Gail, Paul and his family and incorporated herein by reference. These items were issued by PCA without fair consideration.

110.    Collectively, these eight categories of transfers constitute the fraudulent transfers at issue in this proceeding (collectively the "Transfers" and each a "Transfer")[7].

111.    At all relevant times, Paul was aware that PCA had the Malvino Action pending as a unliquidated liability, and that as a result of the Transfers to AJ, Gail, Paul, Mass Mutual, the taxing authorities, lawyers and others, PCA would be unable to satisfy a judgment entered in favor of Malvino against PCA.  These Transfers left PCA with an unreasonably small amount of capital.  As a result, PCA was insolvent or rendered insolvent by virtue of these Transfers.

112.    Despite that knowledge, Paul sanctioned the Transfers to AJ, Gail, Paul, Mass Mutual, the taxing authorities, lawyers and other general creditors.

113.    As such, Paul on behalf of PCA consciously elected to not set aside any monies to satisfy a potential judgment in favor of Malvino and continued to Transfer hundreds of thousands of dollars to AJ, Gail and Paul and other creditors of theirs.

---

[7] Schedules D-G are all to taxing authorities and constitute one category.

114.     Upon information and belief, in making these decisions, Paul failed to undertake any investigation—let alone a reasonable investigation under the circumstances—to ascertain whether in fact the allegations in the Malvino Action were valid.

115.     Paul never undertook any meaningful effort to address or resolve the issue of the Malvino Action, because he had taken steps to continue the coin sales through C & S.

## FIRST CAUSE OF ACTION
(*Fraudulent Conveyance-NYDCL §273-a against AJ, Gail & Attorney Delluniversita*)

116.     Plaintiff repeats and realleges each of the foregoing allegations as if set forth in paragraphs 1 to 115 defendant fully herein.

117.     The judgment debtors, AJ, PCI and PCA are justly indebted to the Plaintiff.

118.     On or about May 21, 2015, judgment debtor, AJ and his wife, Gail and Attorney Delluniversita fraudulently transferred the property located at 56 Easton Avenue, North Babylon, New York to a Trust for the Benefit of Gail A. Delluniversita without fair or reasonable consideration, a day after the United States District Court for the District of Texas issued its Findings of Fact and Conclusions of Law in the Malvino Action.

119.     This conveyance was made while judgment debtor, AJ was a defendant in the Malvino Action, which sought money damages from defendants.

120.     Judgment debtors, AJ, PCA and PCI have failed to satisfy the judgment obtained in the Malvino Action in whole or part.

121.     Based upon the foregoing, Plaintiff is entitled to a judgment declaring that the May 21, 2015 transfer is void and the North Babylon Property be placed back in Anthony J. Delluniversita's name to satisfy the Malvino Action judgment.

## SECOND CAUSE OF ACTION
(*Fraudulent Conveyance-NYDCL §§276 & 276-a against AJ, Gail & Attorney Delluniversita*)

122.    Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 to 121 as if set forth fully herein.

123.    The judgment debtors, PCA, PCI and AJ are justly indebted to the Plaintiff.

124.    On or about May 21, 2015, judgment debtor, AJ, Gail and Attorney Delluniversita caused real property located at 56 Easton Avenue, North Babylon, New York 11703 to be transferred to a Living Trust in the Benefit of Gail A. Delluniversita.

125.    The North Babylon Property had value to AJ which Plaintiff could have realized a portion of its claim from.

126.    The transfer of the North Babylon Property by AJ on or about May 21, 2015 was done with actual intent to hinder, delay or defraud creditors, because it was done the day after Judge Ramos issued her Findings of Fact and Conclusions of Law which found that AJ was going to have a substantial judgment entered against him.

127.    Based upon the foregoing, Plaintiff is entitled to a judgment declaring that the May 21, 2015 transfer is void and the North Babylon Property be placed back in Anthony J. Delluniversita's name to satisfy the Malvino Action judgment.

## THIRD CAUSE OF ACTION
(*Fraudulent Conveyance NYDCL §§273, 278 & 279 against all Defendants and Fraudulent Conveyance under NY B.C.L. §§ 719 & 720 as against Paul*)

128.    Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 to 127 as if set forth fully herein.

25

129.    Upon information and belief, each of the Transfers listed on Schedules A-K and incorporated herein by reference, were made without PCA receiving fair consideration in return.

130.    Upon information and belief, each of the Transfers was lacking in good faith.

131.    Upon information and belief, each of the Transfers was either made while PCA was insolvent or rendered PCA insolvent.

132.    As such, and without regard to actual intent, each of the Transfers was fraudulent as against PCA.  Certain of the transfers were made while PCA was a defendant in an action for money damages—Malvino Action.

133.    Judgment debtors, AJ, PCA and PCI have failed to satisfy the judgment obtained in the Malvino Action in whole or in part.

134.    Accordingly, Malvino and its assignee, Plaintiff is entitled to (i) entry of a judgment against all Defendants pursuant to Debtor & Creditor Law §§ 273 & 278 and against Paul pursuant to N.Y.B.C.L. §§ 719 & 720(a)(2), avoiding each of the Transfers as fraudulent conveyance to the extent necessary to satisfy the Malvino Action judgment and/or attaching or levying execution on the assets of the Defendants in an amount not less than the Malvino Action judgment; and (ii) to the extent that the Malvino's claims have not yet matured, entry of a judgment against all Defendants pursuant to Debtor & Creditor Law §§ 273 & 279 and against Paul pursuant to N.Y. B.C.L. §§ 719 & 720(a)(2): (a) restraining Defendants from transferring, encumbering and/or disposing of any of their property until such time as the Malvino Action judgment is satisfied; and (b) setting aside each of the Transfers to the extent necessary to satisfy the Malvino Action judgment.

## FORTH CAUSE OF ACTION

(*Fraudulent Conveyance NYDCL §§273-a, 278 & 279 against all Defendants and Fraudulent Conveyance under NY B.C.L. §§ 719 & 720 as against Paul*)

135.    Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 to 133 as if set forth fully herein.

136.    Upon information and belief, each of the Transfers listed on schedules A-K, incorporated herein by reference, were made without PCA receiving fair consideration in return.

137.    Upon information and belief, each of the Transfers was lacking in good faith.

138.    Certain of the transfers were made while PCA was a defendant in an action for money damages.

139.    PCA, PCI and AJ have failed to satisfy the money judgment in full.

140.    As such, each Transfer made subsequent to December 21, 2012 was fraudulent as against Malvino without regard to actual intent.

141.    Accordingly, Plaintiff is entitled to (i) entry of a judgment against all defendants pursuant to Debtor and Creditor Law §§ 273-a and 278 and against Paul pursuant to N.Y. B.C.L. §§ 719 and 720(a)(2), avoiding each of the Transfers as fraudulent to the extent necessary to satisfy the Malvino Action judgment and/or attaching or levying execution on the assets of the defendant in the amount not less than the Malvino Action judgment; and (ii) to the extent that Malvino's claim has not yet matured, entry of a judgment against all defendants pursuant to Debtor and Creditor Law §§ 273-a and 279: (a) restraining defendants from transferring encumbering and/or disposing of any of their property until such time that the Malvinas action judgment has been paid to Plaintiff in its entirety, and (b) setting aside each of the transfers to the extent necessary to satisfy the Malvino Action judgment.

27

## FIFTH CAUSE OF ACTION
(*Fraudulent Conveyance NYDCL §§274, 278 & 279 against all Defendants and Fraudulent Conveyance under NY B.C.L. §§ 719 & 720 as against Paul*)

142.    Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 to 140 as if set forth fully herein.

143.    Upon information and belief, each of the Transfers listed in Schedules A-K, and incorporated herein by reference, were made without PCA receiving fair consideration in return.

144.    Upon information and belief, each of the Transfers was lacking in good faith.

145.    Accordingly, Malvino and its assignee, Plaintiff is entitled to (i) entry of a judgment against all Defendants pursuant to Debtor & Creditor Law §§ 274 & 278 and against Paul pursuant to N.Y.B.C.L. §§ 719 & 720(a)(2), avoiding each of the Transfers as fraudulent conveyance to the extent necessary to satisfy the Malvino Action judgment and/or attaching or levying execution on the assets of the Defendants in an amount not less than the Malvino Action judgment; and (ii) to the extent that the Malvino's claims have not yet matured, entry of a judgment against all Defendants pursuant to Debtor & Creditor Law §§ 274 & 279 and against Paul pursuant to N.Y. B.C.L. §§ 719 & 720(a)(2): (a) restraining Defendants from transferring, encumbering and/or disposing of any of their property until such time as the Malvino Action judgment is satisfied; and (b) setting aside each of the Transfers to the extent necessary to satisfy the Malvino Action judgment.

## SIXTH CAUSE OF ACTION
(*Fraudulent Conveyance NYDCL §§275, 278 & 279 against all Defendants and Fraudulent Conveyance under NY B.C.L. §§ 719 & 720 as against Paul*)

146.    Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 to 144 as if set forth fully herein.

28

147.     Upon information and belief, each of the Transfers listed in Schedules A-K and incorporated herein by reference, was made without PCA receiving fair consideration returned.

148.     Upon information believed, each of the Transfers was lacking in good faith.

149.     Upon information and belief, on the date of each of the transfers and/or on any other relevant date, PCA intended or believed that it was about to incur debts beyond its ability to pay them as they matured.

150.     As such, each of the Transfers was fraudulent as against Malvino without regard to actual intent.

151.     Accordingly, Malvino and its assignee, Plaintiff is entitled to (i) entry of a judgment against all Defendants pursuant to Debtor & Creditor Law §§ 275 & 278 and against Paul pursuant to N.Y.B.C.L. §§ 719 & 720(a)(2), avoiding each of the Transfers as fraudulent conveyance to the extent necessary to satisfy the Malvino Action judgment and/or attaching or levying execution on the assets of the Defendants in an amount not less than the Malvino Action judgment; and (ii) to the extent that the Malvino's claims have not yet matured, entry of a judgment against all Defendants pursuant to Debtor & Creditor Law §§ 275 & 279 and against Paul pursuant to N.Y. B.C.L. §§ 719 & 720(a)(2): (a) restraining Defendants from transferring, encumbering and/or disposing of any of their property until such time as the Malvino Action judgment is satisfied; and (b) setting aside each of the Transfers to the extent necessary to satisfy the Malvino Action judgment.

### SEVENTH CAUSE OF ACTION
*(Fraudulent Conveyance NYDCL §§276, 278 & 279 against all Defendants and Fraudulent Conveyance under NY B.C.L. §§ 719 & 720 as against Paul)*

152.     Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 to 150 as if set forth fully herein.

153.    Upon information and belief, at all relevant times, AJ, PCA and PCI knew that they had defrauded Ms. Pereida in the claims asserted by her estate would result in a money judgment being entered against them.

154.    As such, the transfers were effected with actual intent to defraud Ms. Pereida.

155.    Actual intent to defraud may be inferred, among other things, given (a) the fact that PCA was insolvent, or rendered insolvent, at the time of the Transfers listed in Schedules A-K and incorporated herein by reference and/or at any other relevant time; (b) the fact that AJ, PCA and PCI knew they had defrauded Ms. Pereida; (c) the fact that Paul was, at all relevant times an officer in the CEO of PCA who signed checks on behalf of PCA; (d) the fact that Paul knew, or should have known, at the time of the Transfers, that PCA would not be able to pay the Malvino Action judgment when it became due as a result of these Transfers; (e) the timing of each of the Transfers; (f) the close relationship between the parties to each Transfer; (h) the inadequacy of the consideration provided for each Transfer; (i) the fact that PCA had no other assets apart from the proceeds it received from the sale of coins; and (j) the series of transactions in which the Defendants, and, in particular, Paul engaged in after PCA incurred its obligations to Ms. Pereida and her estate.

156.    As such, each of the Transfers was made, with actual purpose and intent, as distinguished from intent presumed in the law, to hinder, delay, and/or defraud PCAs creditors, including Ms. Pereida and her estate, by placing PCA's monies beyond the reach of its creditors, thereby depriving its creditors, including Malvino of the ability to a collect amounts due, including the Malvino Action judgment.

157.    As such, the Transfers are fraudulent as against Malvino.

158.    Upon information believed, each of the Transfers was lacking in good faith.

159.    Accordingly, Malvino and its assignee, Plaintiff is entitled to (i) entry of a judgment against all Defendants pursuant to Debtor & Creditor Law §§ 276 & 278 and against Paul pursuant to N.Y.B.C.L. §§ 719 & 720(a)(2), avoiding each of the Transfers as fraudulent conveyance to the extent necessary to satisfy the Malvino Action judgment and/or attaching or levying execution on the assets of the Defendants in an amount not less than the Malvino Action judgment; and (ii) to the extent that the Malvino's claims have not yet matured, entry of a judgment against all Defendants pursuant to Debtor & Creditor Law §§ 276 & 279 and against Paul pursuant to N.Y. B.C.L. §§ 719 & 720(a)(2): (a) restraining Defendants from transferring, encumbering and/or disposing of any of their property until such time as the Malvino Action judgment is satisfied; and (b) setting aside each of the Transfers to the extent necessary to satisfy the Malvino Action judgment.

## EIGTH CAUSE OF ACTION
*(Violation of N.Y. B.C.L. §§719 & 720(b) as against Paul—asserted derivatively and directly)*

160.    Plaintiff repeats and realleges each of the foregoing allegations in paragraphs 1 to 158 as if set forth fully herein.

161.    Paul voted for and concurred in corporate action undertaken by PCA whereby PCA made the Transfers to AJ, Gail and others outlined in the annexed Schedules A-K.

162.    Indeed, PCA made the Transfers AJ, Gail and others via checks drawn on PCAs account, Paul as the CEO of PCA, signed each check and authorized each Transfer.

163.    The transfers were made in violation of N.Y. B.C.L. §510 insofar as PCA was insolvent at the time of each Transfer and/or rendered insolvent by virtue of each Transfer.

164.    As a result of the foregoing, Plaintiff has been harmed insofar as PCA is unable to satisfy the Malvino Action judgment, which is a judgment for money damages.

165.    Plaintiff has exhausted its legal remedies, obtained the money judgment against PCA and PCA has failed and is unable to satisfy.

166.    By reason of the foregoing, Paul should be held liable to Plaintiff, as the assignee of the Malvino judgment in an amount to be determined at trial, but in no event less than $1.3 million, plus all direct, indirect, incidental and special damages, consequential damages, attorneys' fees, costs, pre-judgment interest and post-judgment judgment interest.

167.    In addition, because Paul has engaged in egregious conduct directed at Malvino, because Paul has willfully and maliciously breached his fiduciary duties in bad faith and with a wanton disregard for Malvino's rights and interests in because the public has an interest in punishing Paul and deterring Paul, and like-minded persons or businesses, from engaging in such gross and morally reprehensible conduct in the future, Malvino also should be awarded punitive damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Steven, Baldo & Lighty, PLLC respectfully prays that this Court enter judgment in its favor and against Defendants, Anthony J. Delluniversita, Paul A. Delluniversita, Gail A. Delluniversita, individually and as trustee for the Living Trust for the Benefit of Gail A. Delluniversita, Anthony P. Delluniversita, Kelly Walsh, PCI Coin Grading, Inc., PCA Collectibles, Inc. and C & S Consulting Agency Inc.:

A.    On the First Cause of Action declaring that the conveyance of the real property located at 56 Easton Avenue, North Babylon, New York 11703 dated May 21, 2015 be deemed a fraudulent conveyance pursuant to Debtor and Creditor Law § 273-a against Anthony J. Delluniversita, Gail A. Delluniversita and Anthony P. Delluniversita and that the property be returned to Anthony J. Delluniversita to be subject to enforcement proceedings by Plaintiff;

32

B.      On the Second Cause of Action declaring that Plaintiff is entitled to a judgment declaring that May 21, 2015 transfer of the real property located at 56 Easton Avenue, North Babylon, New York 11703 is void pursuant to Debtor and Creditor Law § 276 and 276-a against Anthony J. Delluniversita, Gail A. Delluniversita and Anthony P. Delluniversita  and that the property be placed back in  Anthony J. Delluniversita's name to satisfy the Malvino Action judgment;

C.      On the Third Cause of Action, Plaintiff is entitled to (i) entry of a judgment against all Defendants pursuant to Debtor & Creditor Law §§ 273 & 278 and against Paul pursuant to N.Y.B.C.L. §§ 719 & 720(a)(2), avoiding each of the Transfers as fraudulent conveyance to the extent necessary to satisfy the Malvino Action judgment and/or attaching or levying execution on the assets of the Defendants in an amount not less than the Malvino Action judgment; and (ii) to the extent that the Malvino's claims have not yet matured, entry of a judgment against all Defendants pursuant to Debtor & Creditor Law §§ 273 & 279 and against Paul pursuant to N.Y. B.C.L. §§ 719 & 720(a)(2): (a) restraining Defendants from transferring, encumbering and/or disposing of any of their property until such time as the Malvino Action judgment is satisfied; and (b) setting aside each of the Transfers to the extent necessary to satisfy the Malvino Action judgment;

D.      On the Fourth Cause of Action, Plaintiff is entitled to (i) entry of a judgment against all defendants pursuant to Debtor and Creditor Law §§ 273-a and 278 and against Paul pursuant to N.Y. B.C.L. §§ 719 and 720(a)(2), avoiding each of the Transfers as fraudulent to the extent necessary to satisfy the Malvino Action judgment and/or attaching or levying execution on the assets of the defendant in the amount not less than the Malvino Action judgment; and (ii) to the extent that Malvino's claim has not yet matured, entry of a judgment against all defendants

33

pursuant to Debtor and Creditor Law §§ 273-a and 279: (a) restraining defendants from

transferring encumbering and/or disposing of any of their property until such time that the

Malvinas action judgment has been paid to Plaintiff in its entirety, and (b) setting aside each of

the transfers to the extent necessary to satisfy the Malvino Action judgment;

      E.      On the Fifth Cause of Action, Plaintiff is entitled to (i) entry of a judgment against

all Defendants pursuant to Debtor & Creditor Law §§ 274 & 278 and against Paul pursuant to

N.Y.B.C.L. §§ 719 & 720(a)(2), avoiding each of the Transfers as fraudulent conveyance to the

extent necessary to satisfy the Malvino Action judgment and/or attaching or levying execution

on the assets of the Defendants in an amount not less than the Malvino Action judgment; and (ii)

to the extent that the Malvino's claims have not yet matured, entry of a judgment against all

Defendants pursuant to Debtor & Creditor Law §§ 274 & 279 and against Paul pursuant to N.Y.

B.C.L. §§ 719 & 720(a)(2): (a) restraining Defendants from transferring, encumbering and/or

disposing of any of their property until such time as the Malvino Action judgment is satisfied;

and (b) setting aside each of the Transfers to the extent necessary to satisfy the Malvino Action

judgment;

      F.      On the Sixth Cause of Action, Plaintiff is entitled to (i) entry of a judgment

against all Defendants pursuant to Debtor & Creditor Law §§ 275 & 278 and against Paul

pursuant to N.Y.B.C.L. §§ 719 & 720(a)(2), avoiding each of the Transfers as fraudulent

conveyance to the extent necessary to satisfy the Malvino Action judgment and/or attaching or

levying execution on the assets of the Defendants in an amount not less than the Malvino Action

judgment; and (ii) to the extent that the Malvino's claims have not yet matured, entry of a

judgment against all Defendants pursuant to Debtor & Creditor Law §§ 275 & 279 and against

Paul pursuant to N.Y. B.C.L. §§ 719 & 720(a)(2): (a) restraining Defendants from transferring,

34

encumbering and/or disposing of any of their property until such time as the Malvino Action judgment is satisfied; and (b) setting aside each of the Transfers to the extent necessary to satisfy the Malvino Action judgment;

G.     On the Seventh Cause of Action, Plaintiff is entitled to (i) entry of a judgment against all Defendants pursuant to Debtor & Creditor Law §§ 276 & 278 and against Paul pursuant to N.Y.B.C.L. §§ 719 & 720(a)(2), avoiding each of the Transfers as fraudulent conveyance to the extent necessary to satisfy the Malvino Action judgment and/or attaching or levying execution on the assets of the Defendants in an amount not less than the Malvino Action judgment; and (ii) to the extent that the Malvino's claims have not yet matured, entry of a judgment against all Defendants pursuant to Debtor & Creditor Law §§ 276 & 279 and against Paul pursuant to N.Y. B.C.L. §§ 719 & 720(a)(2): (a) restraining Defendants from transferring, encumbering and/or disposing of any of their property until such time as the Malvino Action judgment is satisfied; and (b) setting aside each of the Transfers to the extent necessary to satisfy the Malvino Action judgment;

H.     On the Eighth Cause of Action, awarding Plaintiff, as the assignee of the Malvino judgment in an amount to be determined at trial, but in no event less than $1.3 million, plus all direct, indirect, incidental and special damages, consequential damages, attorneys' fees, costs, pre-judgment interest and post-judgment judgment interest;

I.     Awarding Plaintiff their reasonable attorney's fees and costs;

J.     Awarding Plaintiff prejudgment and post-judgment interest; and

K.     Awarding Plaintiff such other and further relief as the Court may deem just and proper.

**<u>DEMAND FOR JURY</u>**

Plaintiff hereby demands a trial by jury as to all issues so triable.

Dated: September 18, 2019

Respectfully submitted,


___/s/Kenneth G. Walsh_____
Kenneth G. Walsh (KW-1654)
Law Offices of Kenneth G. Walsh
100 S. Bedford Road, 3rd Fl.
Mt. Kisco, New York 10549
(929) 241-7307
kwalsh@kgwalshlegal.com

*Attorney for Plaintiff*