**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **STEVENS BALDO & LIGHTY, PLLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 2:18-CV-1600 (JMA)** |
| | § | |
| **ANTHONY J. DELLUNIVERSITA, and PAUL A. DELLUNIVERSITA.** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

**PLAINTIFF'S RESPONSE TO OBJECTIONS TO SEPTEMBER 19, 2019 ORDER BY MAGISTRATE JUDGE JAMES ORENSTEIN DENYING NON-DEBTOR DEFENDANTS' MOTION FOR RECONSIDERATION OF HIS JULY 24, 2019 PRECLUSION ORDER**

Respectfully Submitted

_/s/ Kenneth G. Walsh____
Kenneth G. Walsh
Law Office of Kenneth G. Walsh
100 S. Bedford Rd., 3rd Fl.
Mt. Kisco, NY 10549
(929) 241-7307

*Attorney for Plaintiff*

**TABLE OF CONTENTS**


Table of Contents ……………………………………………………………………..… ii

Table of Authorities ……………………………………………………………………. iii

Preliminary Statement ………………………………………………………………..… 1

Background …………………………………………………………………………….. 2

Standard of Review ……………………………………………………..………… 8

Argument ……………………………………………………………………………….. 9

Point I: Magistrate Judge's Order was Neither Erroneous Nor Contrary to the Law ….. 9

A. Despite Repeated Warnings by The Court, Defendants Failed To Engage Substitute Counsel or Were Present At The Rule 37 Hearing On Sanctions ………. 9

B. Limited Compliance Does Not Equal Production of All Outstanding Discovery….. 10

C. Defendants' Production is Still Deficient…………………………………….……... 11

D. Plaintiff Has Been Prejudiced by Defendants Dilatory Production ………………… 12

Conclusion ………………………………………………………………………….….… 15

# TABLE OF AUTHORITIES

**CASES:**

*Albert P. Malvino, Representative of the Estate of Bonnie Pereida, Deceased v. Paul A. Delluniversita, et al.*, No.2:12-cv-401 (S.D.TX.) .................. 2

*Albert P. Malvino, Representative of the Estate of Bonnie Pereida, Deceased v. Paul A. Delluniversita, et al.*, Index No. 601594/2018 (Sup. Suffolk Co.) ............................................ 2

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010)............................................................ 8

*Bai v. Zhuo*, No 13-CV-5700 (ILG) (SMG), 2014 U.S. Dist. LEXIS 178083 (E.D.N.Y. Dec. 29, 2014)) .............................................................. 9

*Fielding v. Tollakseen*, 510 F.3d 175 (2d Cir. 2007) ............................................................ 8

*In re Gordon*, 780 F.3d 156, 158 (2d Cir. 2015) .......................................................... 8

*John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 588 F.2d 24 (2d Cir. 1978), *cert. denied*, 440 U.S. 960 (1979) ....................... 10

*Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15-CV-8459, 2017 WL 3142072 (S.D.N.Y. July 24, 2017) .......................... 8

*McCarthy v. Manson*, 714 F.2d 234 (2d Cir. 1983.......................................................... 10

*United States v. Murphy*, 703 F.3d 182 (2d Cir. 2012) ........................................................... 8

*Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988) ............................................................ 10

*McNamee vv. Clemens*, No. 09-CV-16447, 2014 WL 1338720 (E.D.N.Y. Apr. 2, 2014) ....................... 8

*Nielsen v. New York City Dep't of Educ.*,

No. 044-CV-2182 (NGG) (LB), 2007 U.S. Dist. LEXIS 48637 (E.D.N.Y. July 5, 2007)) ........ 8

*Schwartz v. Metro. Prop. & Cas. Ins. Co*., 393 F. Supp. 2d 179 (E.D.N.Y. 2005) ........ 9

*Wynder v. McMahon*, No. 99 Civ. 722 (ILG) (CLP), 2008 U.S. Dist. LEXIS 1945 (E.D.N.Y. Jan. 9, 2008) ........ 8

**STATUTES:**

New York Debtor & Creditor Law § 272 ........ 14

Federal Magistrates Act, 28 U.S.C. § 636 ........ 8

**RULES:**

Fed. R. Civ. Proc., Rule 3.7(a) ........ 4

Fed. R. Civ. Proc., Rule 37(b)(2)(A) ........ 9, 13

Fed. R. Civ. Proc., Rule 72 ........ 8

Fed. R. Civ. Proc., Rule 72(a) ........ 8

United States District Court, Eastern District of New York, Local Rule 6.3 ........ 10

**PRELIMINARY STATEMENT**

The Court should overrule defendants' Rule 72(a) objections. Magistrate Judge Orenstein's non-dispositive discovery order was neither "clearly erroneous," nor "contrary to the law." The Magistrate Judge acted well-within his "broad discretion" in denying defendant's motion to reconsider. Defendants' motion for reconsideration simply argues that the preclusion order was an extreme sanction and unduly harsh. Defendants however fail to identify what Magistrate Judge Orenstein overlooked when he issued his preclusion order on July 24, 2019.

There was good cause for Magistrate Judge Orenstein's preclusion order. Defendants and their counsel had exhibited a history of refusing to comply with this Court's orders and were frustrating plaintiffs' ability to prosecute their claims at every turn. Despite being repeatedly warned by the Court that they should obtain new counsel, defendants refused to heed these warnings. Defendants produced less than 250 responsive documents prior to the Court's Order of July 24, most of which was nonresponsive to the 1,000 fraudulent conveyances at issue in this matter. Defendants' attempts to rectify the situation after the fact does not make Magistrate Judge Orenstein's ruling clearly erroneous. Moreover, the defendants' noncompliance has been prejudicial to the plaintiff and the Court. The Scheduling Order had to be altered to accommodate the substantial delays that they caused and the complaint had to be amended for a third time due to their failure to disclose critical documents beyond the deadline to join additional parties and amend the pleadings. Finally, on July 24, 2019, when the plaintiff's Rule 37 motion was to be heard, defendants didn't even bother to appear in person or through counsel. Simply put, defendants have not identified what mistake was committed by the Court, Magistrate Judge Orenstein's limited preclusion order was entirely appropriate based on the record before him and the law of this circuit.

## BACKGROUND

This is an action to recover the proceeds from approximately 1,000 fraudulent conveyances designed to frustrate collection of an unpaid, registered judgment originally entered in the matter entitled *Albert P. Malvino, Representative of the Estate of Bonnie Pereida, Deceased v. Paul A. Delluniversita, et al.*, No.2:12-cv-401 (S.D.TX.) ("Malvino Action") in the amount of $1,337,201.08.[1] While the Malvino Action was pending and thereafter, Paul A. Delluniversita ("Paul") and other members of the Delluniversita family systematically stripped PCA Collectibles, Inc. ("PCA") of its assets through a series of fraudulent transfers in an effort to make PCA and Anthony J. Delluniversita ("AJ") judgment proof, while continuing the fraudulent business under another guise with another family member now supposedly responsible for the business.

During the pendency of the Malvino Action, Paul, as the CEO of PCA, transferred over $1.3M to various family members, including AJ, Gail A. Delluniversita ("Gail") and himself, at a time when PCA was insolvent, or rendered insolvent, as a result of these transfers, leaving PCA with an unreasonably small capital. PCA made these transfers intending to or believing that it would incur debts beyond its ability to pay the debts when they matured. Paul, as the CEO, president and signatory on PCA's bank account sanctioned the aforementioned transfers.

Essentially, AJ and Paul ran a fraudulent coin investment scheme through PCA. They purchased lists of customers, mostly elderly people, used telemarketers to call the names on the lists, and sold them coins that PCA did not have. When a customer made a purchase via credit card or PayPal, PCA went out and purchased sub-par coins to fill the order. AJ created phony documentation to inflate each coin's value by having PCI Coin Grading Inc. ("PCI") mis-grade

[1] The Malvino judgment has now been domesticated in the Supreme Court of the State of New York, Suffolk County. *Albert P. Malvino, Representative of the Estate of Bonnie Pereida, Deceased v. Paul A. Delluniversita, et al.*, Index No. 601594/2018 (Sup. Suffolk Co.) ("State Court Proceeding"). The judgment has been assigned to Plaintiff by Albert P. Malvino.

the coin to give it a higher value. PCA then sent the coin(s) to the customer under onerous terms of sale. Profits were withdrawn on a weekly basis—stripping the company of assets— to make sure that any of the inevitable judgments the company would face could not be paid. When they were done with a company, they simply created another to continue the fraud. The operation was intentionally designed to fail if a victim asserted a claim against it. The Malvino Action caused PCA to fail and now Paul has replicated the business at C & S Consulting Agency, Inc. ("C & S"). Paul even used PCA checks to start C & S, only months before the Malvino Action was tried before Judge Neva Gonzales Ramos in the Southern District of Texas.

Through supplementary proceedings here in New York after the Malvino judgment was domesticated, Plaintiff discovered the scale and scope of the fraudulent conveyances at issue in this matter. Plaintiff has identified approximately 1,000 fraudulent conveyances made by the Defendants while the Malvino Action was pending. During supplemental proceedings, Plaintiff was able to obtain PCS's operating account which provides a roadmap to how Paul disbursed PCA funds to himself and his family members while the Malvino Action was pending. The most shocking of these transfers was the fraudulent conveyance of AJ's home the day after Judge Ramos issued her Findings of Fact and Conclusion of Law ("FFCL") on May 20, 2015. The FFCL found AJ personally liable for the fraud committed and signaled that a sizeable judgment was to be entered against AJ, PCA and PCI for the fraud perpetrated against Bonnie Pereida. The very next day, in an attempt to insulating it from the Malvino judgment, AJ, Gail and their son and attorney in that action, Anthony P. Delluniversita ("Attorney Delluniversita"), transferred the family home—which they were joint owners of—located at 56 Easton Avenue, North Babylon, New York ("North Babylon Property"), out of their names and into a Living Trust for the Benefit of Gail Delluniversita.

Based on the evidence obtained during supplemental proceedings, plaintiff filed this action on March 15, 2018. During the course of this case, defendants have sought to cover up their fraud by failing to disclose relevant documents. Defendants' lack of compliance with their discovery obligations was calculated to impede plaintiff's investigation. Initially, defendants were represented by Attorney Delluniversita, a co-defendant in this proceeding. They were warned repeatedly by the Court that this was improper. First, Judge Joan M. Azrack alerted defendants to this issue, *sua sponte,* on November 6, 2018 and permitted Attorney Delluniversita to remain in the case if it was uncontested and directed the parties to mediation.[2] Soon thereafter the case was reassigned to Judge Margo K. Brodie and Magistrate Judge James Ornstein.

For nearly five months, defendants' counsel refused to allow the case to move forward. The plaintiff then moved to disqualify Attorney Delluniversita under the Advocate-Witness Rule[3] and due to his obstructionist tactics, which prevented a meaningful mediation, as Judge Azrack directed. The motion was heard during an initial conference before Magistrate Judge Orenstein on April 5, 2019, where the Court denied the motion for disqualification of defendants' counsel without prejudice to renew. The Minute Order entered by the Court that same day stated:

> "[t]he rules of professional responsibility operate in the first instance on attorneys themselves. The defendants' counsel is already in a position to anticipate that his testimony on the merits will be necessary, and that his testimony may or may not agree in material respects with his codefendant clients. ***He therefore has a professional responsibility not to represent his codefendant's***. However, disqualification is not necessary while the parties are exchanging written discovery. ***If counsel has not withdrawn by the time depositions began, I will entertain a renewed motion for disqualification. Given the time counsel now has to prepare for an orderly transition to a conflict free counsel, I do not anticipate staying depositions to accommodate any renewed disqualification motion or to allow the defendants time to seek new counsel if any such renewed motion is granted."***

---

[2] The relevant portion of the November 6, 2018 hearing before Judge Azrack is annexed to the Declaration of Kenneth G. Walsh dated October 10, 2019 ("Walsh Decl.") as Exhibit A.

[3] Rule 3.7(a): "[A] lawyer shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact."

D.E. 67 (emphasis added).

During a status conference with the Court on May 21, 2019, the Magistrate Judge had a discussion with Attorney Delluniversita regarding when he anticipated substitute counsel would be taking over the defense. The Court's Minute Order from that date states: "[t]he defendant intends to engage substitute counsel who does not labor under a conflict of interest; their current counsel will submit a letter by May 28, 2019, specifying when new counsel will appear." D.E. 96.

On May 28, Attorney Delluniversita filed a letter arguing that he could remain in the case until discovery ended. D.E. 98. The Court directed the plaintiff respond and scheduled a status conference for July 2 to address the issue.

On June 4, 2019, defendant Kelly Walsh was deposed and Attorney Delluniversita appeared to defend the deposition. During the course of the deposition, Attorney Delluniversita objected to every question concerning consideration given to PCA in exchange for nine checks to cover her and her husband Paul's tax obligations with speaking objections and instructed the witness not to answer. Annexed to the Walsh Decl. as Exhibit B is a copy of the relevant portions of Kelly Walsh's deposition transcript.

Thereafter, the plaintiff filed several motions to compel the defendant's disclosure of relevant documents. D.E. 101 & 102. The Court directed that the parties be prepared to discuss these matters at the previously scheduled status conference on July 2, 2019. Thereafter defendants started filing a series of motions seeking to stay discovery. D.E. 105.

On July 2, 2019, a status conference was held before Magistrate Judge James Ornstein, after which the Court issued a Minute Order which stated:

> "***[c]ounsel has already reneged on his prior commitment to withdraw before the start of depositions, and his continued representation of his codefendants at their deposition raises on unwaivable conflict of interest and unduly prejudice is the plaintiff.*** Attorney Delluniversita shall withdraw as counsel no later than July 22,

> 2019…. ***I granted the plaintiff's motion to compel***. ***The defendants shall disclose all records responsive to the outstanding request by July 9, 2019***. I remind the defendants and their counsel that their disclosure obligations to records not only in their physical possession, but also those in their custody and control. That the responsive records are held by others, including tax returns that they no longer have in their possession, the defendants shall authorize their release. ***The defendants shall promptly reimburse the plaintiff for the reasonable cost of their counsel's arrival one hour after the scheduled start time of today's conference***."

D.E. 109 (emphasis added). Defendants never sought reconsideration of this Order.

The following week defendants made a Second Motion to Stay Discovery and a Motion for the Extension of Time to File a Response/Reply to Plaintiff's So Ordered Request for Production. D.E. 114 & 115, respectively. On Thursday evening, July 11, plaintiff filed its response to defendants' stay request and filed its First Motion for Sanctions against defendants for failing to comply with the Court's Order of July 2, 2019.[4]

On the morning of Friday, July 12, while Attorney Delluniversita and Plaintiff's counsel sat in Judge Paul J. Baisley's courtroom in the Supreme Court in Suffolk County waiting for a contempt hearing to begin against AJ and Gail for their failure to comply with enforcement devices in the State Court Proceeding, a number of orders were issued by Magistrate Judge Orenstein denying defendants' request for a stay and an extension of time to file response/reply.

On July 24, 2019, Magistrate Judge Orenstein held another status conference, after waiting a half an hour for defendants to arrive, the Court proceeded. After the conference, a Minute Order was entered stating:

> "(1) The defendants did not appear in person or through counsel and did not seek leave to be excused….(2) as set forth on the record, I granted in part and denied in part plaintiff's motion for discovery sanctions. I denied the request for dispositive relief on the grounds that the record does not yet show that lesser sanctions will suffice to secure defendants' compliance with court order and their discovery obligations. Should their noncompliance continue, I will conclude that no remedy short of a default judgment will suffice. I granted the following relief: (a) The defendants shall produce all records within their possession, custody, or control

[4] Plaintiff's Sanction Motion was accepted by Pacer at 12:00:12 A.M. on July 12, 2019.

> responsive to each outstanding discovery demand, without objection, by July 31, 2019….(b) I precluded the defendants from offering any exhibit or testimony and evidence, or making any argument, in support of the proposition that any or all of them provided fair consideration to PCA Collectibles, Inc. (c) The plaintiff shall submit a bill of costs for the previous motion cost I ordered the defendants to reimburse, as well as for the reasonable costs associated with the motion for sanctions."

D.E. 121.

On August 5, 2019, Moritt Hock & Hamroff, LLP ("MHH") filed a notice of appearance on behalf of Paul and Kelly Walsh. D.E. 127. Thereafter they filed a notice of appearance for Gail. D.E. 133. Even AJ finally retained counsel on September 19, 2019. D.E. 153.

On September 17, 2019, Paul was deposed in this matter and admitted that he was aware of his discovery obligations in March, April or May. Annexed to the Walsh Decl. as Exhibit C are the relevant portion of Paul's deposition testimony.

On September 19, 2019, Magistrate Judge Orenstein denied defendants' Motion for Reconsideration [D.E. 153], because defendants could not identify what he had overlooked when he issued his limited preclusion order on July 24.

On October 3, 2019, defendants filed an Objections to September 19, 2019 Order by Magistrate Judge James Orenstein Denying Non-Debtor Defendants' Motion for Reconsideration of His July 24, 2019 Preclusion Order ("Objection"). D.E. 158.

The parties are now less than 30 days away from the discovery deadline and Defendants' discovery is still not complete. AJ has not produced a single document and Paul and Gail have not produced all their tax returns, W-2s and records pertaining to BMW which was paid for by PCA while the Malvino Action was pending.

**STANDARD OF REVIEW**

Under the Federal Magistrates Act, 28 U.S.C. § 636, and Rule 72 of the Federal Rules of Civil Procedure, a magistrate judge is authorized "to make findings as to non-dispositive pretrial matters [] which may not be disturbed by District Judge absent a determination that such findings were clearly erroneous or contrary to the law." *McNamee vv. Clemens,* No. 09-CV-16447, 2014 WL 1338720, at *2 ((E.D.N.Y. Apr. 2, 2014); *Fielding v. Tollakseen,* 510 F.3d 175, 178 (2d Cir. 2007) ("[T]he district court to whom the case is assigned shall consider … objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to the law.") (quoting Fed. R. Civ. P. 72(a)); *see also Arista Records, LLC v. Doe 3,* 604 F.3d 110, 116 (2d Cir. 2010). An order is clearly erroneous if, based on all the evidence, a reviewing court "is left with the definite and firm conviction that a mistake has been committed." *In re Gordon,* 780 F.3d 156, 158 (2d Cir. 2015) (quoting *United States v. Murphy*, 703 F.3d 182, 188 (2d Cir. 2012)); *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC,* No. 15-CV-8459, 2017 WL 3142072, at *1 (S.D.N.Y. July 24, 2017). ("An order is contrary to law when it fails to apply or misapply relevant statutes, case law, or rules of procedure.") (citation and internal quotation marks omitted).

"'[T]he magistrate judge's findings should not be rejected merely because the court would have decided the matter differently. Rather, the district court must affirm the decision of the magistrate judge unless the District Court on the entire evidence is 'left with the definite and firm conviction that a mistake has been committed.'" *Wynder v. McMahon,* No. 99 Civ. 722 (ILG) (CLP), 2008 U.S. Dist. LEXIS 1945, at *2 (E.D.N.Y. Jan. 9, 2008) (quoting *Nielsen v. New York City Dep't of Educ.*, No. 044-CV-2182 (NGG) (LB), 2007 U.S. Dist. LEXIS 48637, at *1 (E.D.N.Y. July 5, 2007)). "[M]agistrates are afforded broad discretion in resolving discovery

disputes and reversal is appropriate only if their discretion is abused." *Schwartz v. Metro. Prop. & Cas. Ins. Co.*, 393 F. Supp. 2d 179, 181 (E.D.N.Y. 2005))); *see also Bai v. Zhuo*, No 13-CV-5700 (ILG) (SMG), 2014 U.S. Dist. LEXIS 178083, at *2 (E.D.N.Y. Dec. 29, 2014)).

## ARGUMENT

## POINT I

## THE MAGISTRATE JUDGE'S ORDER WAS NEITHER ERRONEOUS NOR CONTRARY TO THE LAW

### A. Despite Repeated Warnings by the Court, Defendants Failed to Engage Substitute Counsel or Were Present at the Rule 37 Hearing on Sanctions

On July 24, 2019, after waiting half an hour, the Court began the scheduled status conference and hearing on the Plaintiff's First Motion for Sanctions. D.E. 117. The defendants were no longer represented by counsel as a result of Attorney Delluniversita's withdrawal a day earlier. [D.E. 119]. Attorney Delluniversita had been repeatedly warned to engage substitute counsel [D.E. 67, 96 & 109] and was not present at the hearing. The Court considering the opposition interposed by Attorney Delluniversita on July 13, 2019 [D.E. 118], granted in part and denied in part the plaintiff's motion for sanctions. D.E. 121. After weighting the various sub-provisions of Rule 37(b)(2)(A), the Court concluded that a limited preclusion order was appropriate based on the defendants' history of noncompliance and dilatory tactics. The defendants had demonstrated to the Court that they were not taking their discovery obligations seriously and were attempting to frustrate the Court's administration of the case.

The fact that the defendants did not have counsel present is of no consequence. They were warned repeatedly first by Judge Azrack in November 2018 and later by Magistrate Judge Orenstein to engage conflict free counsel. D.E. 67, 96 & 109. The defendants chose not to heed the advice until after the Court issued a subsequent preclusion order. This was not an error that can

be assigned to the magistrate judge. The defendants made a conscious decision not to engage substitute counsel. Only after the preclusion order was entered did the defendants take this advice seriously. The error is properly assigned to the defendants and their former counsel and co-defendant, Anthony P. Delluniversita, not the Court.

The factual underpinning of the preclusion order was the Court's July 2, 2019 Order granting the plaintiff's motions to compel. Under Local Civil Rule 6.3, the defendants had 14 days to move for reconsideration of the order compelling "[t]he defendants to disclose all records responsive to the outstanding requests by July 9, 2019." This Order was directed to ***all the defendants.*** Attorney Delluniversita never attempted to challenge this. By failing to timely challenge the order, all the defendants, including the Non-Debtor Defendants, waived appellate review. *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988); *see also McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983); *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 588 F.2d 24, 29-30 (2d Cir. 1978), *cert. denied*, 440 U.S. 960 (1979). The July 2 Order applied to all the defendants. That served as the structural underpinning for the July 24, 2019 Order. The Court should not reverse the July 24, 2019 limited order of preclusion due to the defendants' inaction and waiver of their rights under the controlling authority.

**B. Limited Compliance Does Not Equal Production of All Outstanding Discovery**

The defendants argue that they made substantial production prior to the preclusion order. *See* Defendants' Objection at 4. This production consisted of less than 250 pages. A significant number of those documents were not relevant to this case. Under New York Debtor & Creditor Law, a plaintiff's claim can reach back six years. The defendants' partial production consisted of documents over 10 years old. Annexed to the Walsh Decl. as Exhibit D are copies of the documents

produced by Paul on May 9, 2019. These documents predate the defrauding of Bonnie Pareida in 2011 and are simply not relevant to the claims at bar.

What is interesting is that the defendants were able to lay their hands on these decade old documents for car payments and health insurance, but were unable to timely produce tax returns for 2013, 2014 & 2018 for AJ and Gail. Their 2018 returns were due just weeks prior to plaintiff's discovery demands. Nor were they able to produce a single document concerning a BMW convertible purchased for AJ and Gail in Florida with PCA funds. Paul admitted that he knew of his discovery obligations in the early spring, but could not explain why responsive documents had not been turned over until September. *See* Exhibit C to the Walsh Decl.

The Court's Order of July 2, 2019 stated that "[t]he defendants shall disclose all records responsive to the outstanding requests by July 9, 2019." D.E. 109. As of this date, AJ has not produced a single document. Gail has failed to produce a complete set of tax returns or W2s from 2012 to present as requested. Gail and Paul have failed to produce any documents concerning the 2006 BMW 650 convertible that PCA purchased for AJ and Gail from Vista Motors of North Broward, in Coconut Creek, Florida. The July 2 order required all responsive records, not merely 250 documents turned over prior to the order. MHH argues that they have produced 3,000 documents since they were retained in August. That fact just highlights how lacking defendants' partial disclosure prior to the July 24 Order was and that it should not be disturbed.

**C. Defendants' Production is Still Deficient**

Contrary to MHH's position, they have not rectified all the deficiencies in their clients' production. Two months after their appearance was entered, plaintiff still does not have all the documents defendants were ordered to produce. They cannot point to a single responsive document

pertaining to the BMW. Their own schedule annexed to the Objections confirms that tax returns and W2s are still missing.

**D. Plaintiff Has Been Prejudiced By Defendants Dilatory Production**

MHH is correct to point out that the plaintiff has amended the complaint three times. *See* Objection at 2. What they omit is that this is been the result of Attorney Delluniversita and the Defendants' failure to produce documents timely.

On January 29, 2019, plaintiff requested a pre-motion conference with the Court because we learned that AJ and Gail were attempting to sell a previously undisclosed property in Florida. D.E. 45. During a March 5, 2019 teleconference with Judge Azrack, the Court instructed plaintiff to amend the complaint to add allegations concerning this property. Annexed to the Walsh Decl. as Exhibit E is a copy of said transcript of the teleconference with the Court.

Plaintiff then learned of C & S Consulting Agency Inc. ("C & S") on July 13, after the deadline for the joinder of additional parties and amendment of pleadings under the Court's April 5, 2019 Scheduling Order. D.E. 67. In an attempt to fend off discovery sanctions, Attorney Delluniversita produced a few bank statements for C & S. It was not until after MHH appeared did plaintiff get an explanation what C & S was. This then explained who PCA was issuing checks to just prior to the Malvino Action trial in Texas. This necessitated third amendment of the complaint due to the late disclosure of this company which we believe is the successor in interest to PCA.

C & S's production includes items where Paul is reimbursing AJ for "Chem".[5] During Paul's deposition, he could not recall what "Chem" represented although he is the only person

---

[5] "Chem" was listed in the memo portion of C & S Check No. 2127 drawn by Paul on May 17, 2019. A copy of this item is annexed to the Walsh Decl. as Exhibit F.

preparing the checks at C & S and this item was issued on May 17, 2019. Plaintiff believes "Chem" represents chemicals. In the numismatic industry, chemicals are used to clean sub-par loose or raw coins. In the Malvino Action, several independent coin appraisers testified that the coins sold to Bonnie Pereida by PCA had been cleaned. Judge Ramos's stated in her FFCL that this is an illegitimate practice used to enhance a coin's value. It appears that C & S may be using the same deceptive practices that PCA used to defraud Ms. Pereida.[6]

From the beginning of this case, defendants have sought to mask their fraudulent activities by withholding responsive relevant documents. Plaintiff had to move to compel the disclosure of these documents, and when they were not produced in violation of the Court's July 2 Order, plaintiff then had to move for sanctions under Rule 37(b)(2)(A). Magistrate Judge Orenstein granted in part and denied in part plaintiff's motion for sanctions and issued a limited preclusion order based on the entire record before him and the controlling case law. The July 24, 2019, limited preclusion order did not misapply any relevant statutes, case law, or rules of procedure. Nothing was overlooked. This order was a result of the defendants and their counsel's calculated withholding of responsive documents to stall the proceeding. Magistrate Judge Orenstein observed these delay tactics and his Order of July 24, 2019 was a measured response to the defendants' non-compliance to his prior Order of July 2, 2019. The defendants have not carried their burden of persuasion to warrant the modification or setting aside of this well-reasoned order as clearly erroneous or contrary to law.

Defendants' application also seeks to reward their dilatory actions by placing plaintiff back to where they were when discovery started in April. That would be a disservice. Under plaintiff's

[6] If the Court modifies or sets aside the limited preclusion order, the parties will have to take further discovery on the fair consideration that they gave to PCA for their "wages" and the profits of the company. Plaintiff has asserted that Paul and AJ ran a fraudulent coin scheme.

fraudulent conveyance claims, fair consideration is a key element under New York Debtor & Creditor Law ("NYD&CL"). Fair consideration is defined under NYD&C § 272.[7] Good faith is a necessary element of fair consideration. None of the defendants can show good faith. They all knew of the Malvino Action—AJ and Paul were parties to the action. Attorney Delluniversita represented them in Texas. Gail testified that she knew of the matter for years and that it ended in May 2015. Annexed to the Walsh Decl. as Exhibit F are the relevant portion of Gail's examination in the State Court Proceeding where she admitted that she knew of the Malvino Action. Kelly Walsh testified at her June 4, 2019 deposition that she did not give any consideration for the 9 checks issued by PCA to the Internal Revenue Service or New York State totaling $111,674 for her and her husband's tax obligations. *See* Exhibit B to the Walsh Decl. So the net result is that if this order is somehow modified or set aside, the Court will have to entertain briefing on the issue of fair consideration. Simply stated, there was no good faith because both the transferor and/or the transferee were both lacking good faith in these intra-family transfers.

Modifying or setting aside Magistrate Judge Orenstein's limited order of preclusion dated July 24, 2019 would set the case back months and reward defendants for their obstructionist litigation strategy. Nothing in this Order is clearly erroneous or contrary to the law to warrant disturbing it. The Court did not overlook anything. In fact, it was entirely appropriate and consistent with the Federal Rules of Civil Procedure and the controlling case law based on the record before the Court.

[7] Fair consideration is given for property, or obligation,

a. When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

b. When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained.

**CONCLUSION**

For the foregoing reasons, Plaintiff Stevens Baldo & Lighty, PLLC respectfully requests that the Court reject Defendants' Objections to September 19, 2019 Order by Magistrate Judge James Orenstein Denying Non-Debtor Defendants' Motion for Reconsideration of His July 24, 2019 Preclusion Order because there was no clearly erroneous error, nor was it contrary to the law.

Dated: October 10, 2019

/s/Kenneth G. Walsh
Kenneth G. Walsh (KW-1654)
Law Offices of Kenneth G. Walsh
100 S. Bedford Road, 3rd Fl.
Mt. Kisco, New York 10549
(929) 241-7307
kwalsh@kgwalshlegal.com

*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

I, Kenneth G. Walsh, hereby certify that on this 10th day of October 2019, a true and correct copy of Plaintiff's Response to Objections to September 19, 2019 Order by Magistrate James Orenstein Denying Non-Debtor Defendants' Motion for Reconsideration of His July 24, 2019 Preclusion Order and Certificate of Service was filed electronically. Notice of this filing will be electronically mailed to all parties registered with the Court's electronic filing system. Additionally, a copy of the same was delivered via First Class Mail to the following:

PCA Collectibles, Inc.
1045 Route 109, Suite 104
North Lindenhurst, NY 11757

/s/Kenneth G. Walsh
Kenneth G. Walsh